SCHNEIDER *v.* POMERVILLE.

1. APPEAL AND ERROR—NONJURY CASES—SUPREME COURT REVIEW.
   The Supreme Court acts exclusively as an appellate court in reviewing controverted issues of fact in a nonjury case and does not consider the case *de novo* as in equity cases. (Court Rule No 64 [1945]).

2. SAME—NONJURY CASES—VERDICTS—OVERWHELMING WEIGHT OF EVIDENCE.
   A broader scope of review is provided by court rule in a nonjury case than on review of a judgment entered upon verdict of a jury, as in the latter cases a verdict will only be set aside when it is against the overwhelming weight of the evidence (Court Rule No 64 [1945]).

3. SAME—NONJURY CASES—EVIDENCE.
   The Supreme Court sifts the evidence in a nonjury case to determine whether it clearly preponderates in favor of the appellant's cause (Court Rule No 64 [1945]).

4. TRIAL—NONJURY CASES—UNDISPUTED TESTIMONY OF DISINTERESTED WITNESS.
   The circuit judge, as trier of the facts in a nonjury case, is entitled to disbelieve the undisputed testimony of a disinterested witness, but the party in whose favor such testimony was presented is entitled to a recorded consideration thereof, where it is crucial (Court Rule No 64 [1945]).

5. EVIDENCE—CIRCUMSTANTIAL EVIDENCE—WITNESSES.
   Circumstances, which are things, constitute inflexible proofs;

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error §§ 817, 895 *et seq.*
[2] 3 Am Jur, Appeal and Error §§ 887, 900.
[3] 3 Am Jur, Appeal and Error § 895 *et seq.* .
[4] 53 Am Jur, Trial § 1123; 58 Am Jur, Witnesses §§ 862, 864.
[5] 20 Am Jur, Evidence § 1189.
[6] 3 Am Jur, Appeal and Error § 1215.
[7] 14 Am Jur, Costs § 95.

while witnesses may be mistaken, or careless in their use of words, especially when interested in the judicial result.

6. AUTOMOBILES—NONJURY CASE—REMAND—UNDISPUTED TESTIMONY OF DISINTERESTED WITNESS—CONTRIBUTORY NEGLIGENCE.

Nonjury automobile accident case is remanded with direction to trial judge to recall a specified disinterested witness, if desirable, and make a specific determination of fact as to whether testimony previously and then presently evoked as to location of skid marks of defendant's car tires is or is not entitled to fair credence, where the crucial testimony of such witness appears to have been ignored and Supreme Court is unable to determine without such finding, whether trial court's determination that plaintiff was guilty of contributory negligence was proper (Court Rule No 64 [1945]).

7. COSTS—REMAND FOR ADDITIONAL FINDING.

Costs of the Supreme Court and of the trial court are ordered to abide the final result, where case is remanded for making an additional finding and perhaps the taking of more testimony.

Appeal from Jackson; Simpson (John), J. Submitted January 9, 1957. (Docket No. 22, Calendar No. 46,980.) Decided February 28, 1957.

Case by Thomas Schneider against Lawrence W. Pomerville and Catherine Galloway for personal injuries resulting from automobile collision. Judgment for defendants. Remanded for further finding of fact by trial judge.

*Humpsch & Giltner* (*Kleinstiver & Anderson,* of counsel), for plaintiff.

*McKone, Badgley, Domke & Kline,* for defendants.

This automotive negligence case was tried to the court. The trial judge found plaintiff guilty of contributory negligence and entered judgment for defendants. His opinion, upon which judgment was entered, reads as follows:

"This is an action for damages growing out of an automobile collision. The accident occurred November 14, 1948, about 1:30 in the morning. The plaintiff was a resident of Lansing and had come to Jackson for the evening and had gone to a show, Dyer's Bar, and then to the Regent Cafe. He says after he got out of the Regent Cafe the bar was closed so he got his car and started for home out US–127 towards Lansing.

"The defendant, Pomerville, and his party apparently thought Lansing had more entertainment, so after getting together, they went to Lansing, drove around awhile, went into a restaurant, had something to eat, and then started back towards Jackson. On the way back they stopped at the Red Barn and had some beer. They then started for Jackson and south of Leslie, after they had rounded the curve heading for Jackson, the plaintiff's car and the defendant's car collided. The defendant said he was probably over into the other lane about a foot when he was coming around the curve, but before the accident happened he was in his own lane and that the plaintiff was in the defendant's lane of traffic and the cars came together, throwing the plaintiff's car slightly around so that it was facing in a northwesterly direction and the defendant's car was just at a very slight angle.

"All the parties in the defendant's car say they were on their own side of the road when the collision occurred so that when the parties on the right side of the car got out they stepped on the gravel. This pavement at that spot south of the curve is a good wide road and there is apparently plenty of room, and had the plaintiff stayed on his side of the road he could have gone by without any difficulty because after the collision occurred an oil tanker went by the plaintiff's car standing in the position it was without hardly getting off the pavement.

"So, here we have a case where both drivers had been drinking somewhat but none of them driving at a great rate of speed according to their own

testimony, the plaintiff saying he was going about 30 or 35 miles an hour, and the defendant stating that he was going around 30 miles or less an hour.

"In the opinion of the court, the plaintiff has failed to establish by the preponderance of the evidence that he was free from contributory negligence and that it was the defendant's sole negligence that caused the accident. Plaintiff tries to claim sudden emergency which caused him to pull over to the left. In the opinion of the court, if there was any sudden emergency it was caused by the plaintiff's own driving. He had plenty of space on his own side of the pavement, and had he stayed there as a reasonably prudent person would have done there would have been no accident. All of the defendant's witnesses testified that they were on their own half of the highway and that the plaintiff was over on their side of the highway and were unable to avoid hitting the plaintiff's car although the defendant tried to avoid it.

"After careful consideration of the facts, the court is of the opinion that the plaintiff has failed to show that he was free from contributory negligence, and has failed to show that the cause of the accident was the sole negligence of the defendant. Therefore, a judgment of no cause for action may enter."

Aside from that which is portrayed in the quoted opinion, the record shows proof of physical evidence and a stipulation that Dr. Kraft, of nearby Leslie, gave first aid to plaintiff and to an occupant of defendants' car (witness Baird). The stipulation recites that the doctor, if called as a witness, would testify that he "detected no evidence of any kind that Mr. Schneider had been drinking" and that "Mr. Baird was then intoxicated." The mentioned physical evidence will be considered during test of the only decisive assignment, *viz.*, "that the judgment is against the preponderance of the evidence" (Court Rule No 64 [1945]).

BLACK, J. (*after stating the facts*). *First:* The case before us is a close one since it appears with clearly preponderating force that defendant Pomerville was the first of the 2 approaching drivers to partially encroach upon the left side of the pavement. The real question—one of fact manifestly— is thus addressed to causation, refined to this: Did the defendant driver return to his own side of the pavement in ample time, considering relative distances and speeds, to eliminate the sudden emergency doctrine plaintiff invokes?

The assignment of error before us requires thought upon the same questions of practice as were considered at length in opinions written respectively by Justices MCALLISTER and NORTH in *Jones* v. *Eastern Michigan Motorbuses,* 287 Mich 619, 643. Do we test such an assignment to determine whether findings of fact are contrary to clear weight of the evidence or, as the expression appears occasionally, contrary to overwhelming weight of the evidence (*In re Cutter's Estate,* 194 Mich 34, 38, 39)? Or, referring to cases such as *Leonard* v. *Hey,* 269 Mich 491 (37 NCCA 111); and *Brackins* v. *Olympia, Inc.,* 316 Mich 275 (168 ALR 890), do we seek on impetus of such assignment to determine whether the evidence clearly preponderates in favor of the appellant? These questions, I think, are due for fair answer since it is clear that uncertainty exists in regard to relevant function of this Court in jury and nonjury cases.

The following points appear as having been fairly settled in *Jones'* prevailing opinion:

1. In reviewing controverted issues of fact under Court Rule No 64 (1945), we act exclusively as an appellate court and do not consider the case *de novo* as in equity cases.

2. A broader scope of review is provided by Court Rule No 64 than obtains on review of a judgment

entered upon verdict of a jury.* This latter conclusion prompts approach, as follows, to consideration of the case at bar:

Our duty under said Rule 64, the question being duly posed and saved for review, is to sift the evidence for determination whether it clearly preponderates in favor of the appellant's cause. Necessarily, the judicial sieve will be of finer mesh than the one correspondingly employed here on review of denial of motion for new trial in a jury case. This is as it should be. A jury's verdict-view of facts is entitled to an even higher degree of appellate respect than is a judge's verdict-view of the same facts, learned though the judge may be in law. For reasons known well to students of American history, a finding of fact by "the twelvers" is more apt to be sound than that of one man.† If this be right, our task at bar is bound to be a more difficult one than if the judgment below had been entered on verdict of a jury. When in rare instance a jury's verdict is

---

* We are steadfastly committed, on review of denial of motions for new trial in jury cases, to the rule of *McConnell* v. *Elliott*, 242 Mich 145, 147, *viz.*:

"Nor can we say on this record, having due regard for our duties as a reviewing court, that the verdict should be set aside as against the weight of the evidence. We, of course, do not on the law side of the court try cases *de novo*. The fact that we would reach a different conclusion than did the jury is not controlling. *We should set aside a verdict, and only set one aside, when it is against the overwhelming weight of the evidence.*" (*Van Dyke* v. *Rozneck*, 324 Mich 29, 31; *Michigan Fire & Marine Ins. Co.* v. *Pretty Lake Vacation Camp, Inc.*, 316 Mich 197, 206, 207.)

† *Sioux City & Pacific R. Co.* v. *Stout*, 84 US 657, 664 (21 L ed 745) (a case we have quoted or cited on previous occasion—*Thompson* v. *Michigan Cab Co.*, 279 Mich 370; *Clark* v. *Shefferly*, 346 Mich 332), puts it this way:

"Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that 12 men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge."

judged contrary to overwhelming weight of evidence, the conclusion must be so obvious that verdict-sustaining argument loses all force. On the other hand, when evidence is appraised to determine clear preponderance thereof, forceful argument each way subsists to the last and usually survives final judgment.

*Second:* The helpful photographic exhibits brought here show that this substantially head-on collision occurred when defendants' southbound car had just completed traversing the presently mentioned curve and plaintiff's northbound car was about to enter the curve. The latter is right-inside for a southbound motorist and left-outside for a northbound driver. For a trunk line highway it is unusually sharp. The photographs show that an original T-intersection of graveled highways—the cross-bar being east-west—existed at the point and that the curve proceeds across the southwest quadrant, thus completing a right-angle turn of the trunk line. They show also that a northbound motorist, about to enter the curve, finds himself with little space within which to maneuver on his right side, the shoulder being narrow and there being a nearby row of trees—too large for combat—in the right-hand highway ditch. So, and as previously indicated, plaintiff's claimed right to application of the "sudden emergency" doctrine depends to great extent on the distance, short of the final point of impact, defendant Pomerville returned, if he did, to his own side of the pavement.

If, as claimed by him, plaintiff remained on his own side of the pavement until a collision with defendants' oncoming center-straddling car was so imminent as to impel a last-moment turn to left or right, then he assuredly was entitled to application by the trial court of the mentioned emergency doctrine. On the other hand, and if, as claimed by de-

fendants, their car regained the right side of the pavement well before the collision occurred, then contributory negligence in this case was rightfully found by the trial judge. We come, then, to consideration of that which plaintiff insists the trial judge overlooked or ignored—physical evidence showing (according to plaintiff) that the collision occurred consistent with his testimony and pleaded theory of recovery.

Charles McMann, a resident of Leslie and a guard at the State prison near Jackson, came to the scene of collision shortly after its occurrence, accompanying Deputy Sheriff Wood. He testified that upon arrival Wood decided a doctor and ambulance should be called and that he, Wood, "gave me his flashlight, a piece of paper and told me to get their names and addresses and he would get the doctor and ambulance." McMann testified to physical and other details as he found them and, to the crux of the case, as follows:

"*Q.* And from that place where you found the broken glass and debris, continuing north there, state whether or not you noticed any tracks or tire marks.

"*A.* There were skid marks on the pavement where this car was coming from the north. * * *

"*Q.* * * * Well, I want to ask, where did those skid marks stop?

"*A.* Right at the impact of the collision.

"*Q.* That is where you found the broken glass and debris?

"*A.* Yes, sir.

"*Q.* And in which direction did those tire marks extend from that point?

"*A.* Back north.

"*Q.* And will you describe where they were with reference to the center line of the pavement?

"*A.* About 3 feet, between 2-1/2 and 3 feet, maybe 3-1/2 feet on the left-hand side of the center line as you're coming toward Jackson.

"*Q.* How far back to the north did those tracks extend?

"*A.* Oh, I would say between 100 and 125 feet.

"*Q:* Will you describe that more in detail, Mr. McMann?

"*A.* Well, you could see as the car was coming around, instead of just coming around, drawing a straight black mark around, it kept sliding a little.

"*Q.* And sliding which way?

"*A.* Around to the left as you are coming this here way (indicating).

"*Q.* And how far from where they started—about 150 feet—how far over the center line were they?

"*A.* Well, on the dead part of the curve about, oh, 4 feet over."

McMann's testimony was not impeached or questioned as to credibility on cross-examination. He was unknown to any of the parties or witnesses. His affirmation as to existence and description of tire or skid marks was not disputed. If entitled to credit, such proof forcefully supports plaintiff's claim that the southbound car was partly on his side of the pavement to the approximate time of impact.

That the trial judge was entitled to disbelieve McMann's testimony admits of no doubt (see reasons for this rule given in *Hayes Construction Co.* v. *Silverthorn,* 343 Mich 421, 428, 429). Whether he did so disbelieve, or whether he overlooked that testimony, is left unanswered. Such testimony was crucial. Considering it with convincing proof that the *right* front corner of plaintiff's car received the brunt of the collisive blow; that the *left* front corner of defendants' car received the corresponding brunt, and that the 2 cars following impact were substantially "astraddle" the center line of the pavement, we are inclined to rule that plaintiff was and now is entitled to recorded consideration thereof by the trial judge. The tire or skid marks were either there as

testified, or they were not. We should know, through the trier of facts.

Circumstantial evidence of such nature—again we say if verity thereof be established—is especially weight-worthy. Circumstances, which are things, constitute inflexible proofs. Witnesses may be mistaken, or careless in their use of words, especially when interested in the judicial result. Circumstances can be neither. They cannot lie, once they are established. Accordingly, there being no reason so far as cold print discloses why McMann's said testimony should be disregarded, and defendants having shown none in their brief to this Court, we hold that the question before us—whether the judgment for defendants is against clear preponderance of the evidence—cannot be settled unless and until verity of McMann's testimony is denied or upheld by the court to which that function is committed.

The cause will be remanded with direction that the trial court determine, by supplemental opinion to be filed, whether McMann's quoted testimony is or is not entitled to fair credence. If the determination be affirmative a new judgment will enter for plaintiff in such damage amount as may be found below. If in the negative, the present judgment will stand affirmed. To assist determination on remand the trial judge may, if desired, recall Mr. McMann under Court Rule No 32 (1945). If that is done, and if extended examination and cross-examination be made, we suggest that the trial judge refrain from making, on his own motion, objections to questions and offers of proof by plaintiff's counsel. The present record discloses more of that practice than appears reasonably necessary.

In reaching present decision we have not overlooked the rule of *Tarnowski* v. *Fite,* 335 Mich 267; and *Shpakow* v. *Brown,* 300 Mich 678. In exceptional cases brought here under Court Rule No 64,

and this case is deemed such an exception, we may remand for essential determination of unsettled or overlooked questions of fact. As in *Shpakow,* we would assume that the trial judge found witness McMann's testimony of no worth had this record disclosed an actual or assigned reason for such finding. As noted, there was and is no such disclosure.

Remanded accordingly. Costs of this Court, and of the trial court, will abide and be taxed according to the final result.

SHARPE, SMITH, EDWARDS, VOELKER, and CARR, JJ., concurred with BLACK, J.

DETHMERS, C. J., and KELLY, J., concurred in the result.