COLOVOS v DEPARTMENT OF TRANSPORTATION

Docket No. 134013. Submitted November 9, 1993, at Lansing. Decided
June 6, 1994, at 10:10 A.M. Leave to appeal sought.

Bill Colovos, as personal representative of the estate of Nancy A.
Merrell, brought an action in the Court of Claims against the
Department of Transportation, alleging in part that the defen-
dant breached a duty to provide adequate signs warning of ice
on a freeway bridge. Following a trial during which the court,
because of its schedule, refused to allow the plaintiff to present
a substitute expert witness for the expert witness originally
scheduled to testify, the court, Peter D. Houk, J., issued a
judgment of no cause of action with respect to the claim of
inadequate warning. The plaintiff appealed.

The Court of Appeals *held:*

Administrative Order No. 1994-4 constrains the Court of
Appeals to follow *Pick v Gratiot Co Rd Comm,* 203 Mich App
138 (1993), in holding that there is no duty to erect signs or
warning devices unless they are located on the improved por-
tion of the road. Were it not so constrained, the Court of
Appeals would hold that the failure to post warning signs in
addition to, or better than, the one sign that was present was a
proximate cause of the decedent's accident, and that the trial
court abused its discretion in excluding the plaintiff's proposed
substitute expert witness.

Affirmed.

T. R. THOMAS, J., concurring in the result, stated that *Pick*
was decided correctly with regard to the issue of governmental
immunity and that highway signs fall into two categories: one
for control of traffic flow and the other for warning or remind-
ing motorists of potential dangers of which they are already
aware. The failure to erect a sign from the first category would
affect vehicular travel on the highway and be actionable for
ordinary negligence, while the failure to erect a sign from the
second category would not affect vehicular travel and would, as
in this case, be protected by governmental immunity. Inade-
quate warning in this case was not a proximate cause of the
decedent's accident. With regard to the issue of the substitute
expert witness, any error resulting from the trial court's re-
fusal to allow that witness to testify was harmless.

*David A. Bower* and (*Sommers, Schwartz, Silver & Schwartz, P.C.* by *Patrick Burkett,* of Counsel), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Brenda E. Turner* and *Harold J. Martin,* Assistant Attorneys General, for the defendant.

Before: MICHAEL J. KELLY, P.J., and HOOD and T. R. THOMAS,* JJ.

HOOD, J. This is a personal injury case involving a phenomenon known as preferential icing.[1] Plaintiff's decedent was killed in an automobile accident after the car in which she was riding skidded on the ice and was struck by oncoming traffic. Defendant won a directed verdict in a bench trial with regard to claims alleging defective design and lack of proper maintenance. The court later issued a judgment of no cause of action with regard to plaintiff's claim of breach of defendant's duty to provide adequate warnings. Only this last ruling is at issue here.

In *Pick v Gratiot Co Rd Comm,* 203 Mich App 138; 511 NW2d 694 (1993), a panel of this Court held that there is no duty to erect signs or warning devices unless these are located on the improved portion of the road. We feel strongly that the panel in *Pick* erred in this holding. See *Tuttle v Dep't of State Hwys,* 397 Mich 44; 243 NW2d 244 (1976) (holding that the defendant was negligent in failing to install traffic signals at an intersection in contravention of its own findings that the inter-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] "Preferential icing is a meteorological phenomenon in which ice forms on a bridge deck at a time when the surface of the bridge approaches is clear and dry." *Salvati v Dep't of State Hwys,* 415 Mich 708, 711; 405 NW2d 856 (superseding 330 NW2d 64) (1982). It is "intermittent, unpredictable and often rapidly developing." *Id.*

section was dangerous). However, because we are constrained by Administrative Order No. 1994-4, which replaced Administrative Order No. 1990-6, to follow *Pick,* we affirm. Because, but for *Pick,* we would reverse, we urge the convening of a special panel to resolve the conflict that would have been created by this decision but for Administrative Order No. 1994-4.

Plaintiff first argues that the trial court clearly erred in finding that inadequate warning signs were not the proximate cause of plaintiff's injury. We agree.

The trial court found that defendant had a duty to provide safe highways, including the duty to warn of known dangers. It found that there was a single warning sign at the entrance of the bridge and that it was not seen by either driver in this case. The court found that, although the sign conformed to the Michigan Manual of Uniform Traffic Control Devices, given the size of the road, the sign was inadequate to warn the majority of motorists because of where it was placed and the fact that it was the only sign.[2]

However, the court found that both drivers were experienced and aware that bridges tend to ice over in the winter and that both drivers were aware that ice warning signs are generally placed near bridges. The court found that both drivers were proceeding at a prudent speed of forty-five miles per hour given the slight precipitation and the non-icy condition of the surrounding road surface. The court found that it could not "conclude that the presence of an additional sign would have altered the already prudent driving of [the persons

---

[2] The accident occurred on the Rouge River Bridge on northbound I-75. The bridge is 1.6 miles long and four lanes wide on the northbound side. There is an entrance ramp onto the highway shortly before the bridge.

involved] in any significant fashion." The court rejected as experimental and unduly expensive plaintiff's claim that defendant should be required to provide a warning system that is somehow activated only when there is actually ice on the bridge—as opposed to a sign that remains in place at all times regardless of weather conditions and that therefore tends to be ignored.

A trial court's findings of fact may not be set aside unless they are clearly erroneous. *Tuttle, supra* at 46. A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v United States Gypsum Co,* 333 US 364, 395; 68 S Ct 525; 92 L Ed 746 [1948]). We agree with plaintiff that, in nonjury cases such as this one, "the 'judicial sieve' with which we have sifted the evidence . . . is 'of finer mesh than the one correspondingly employed on review' of a jury's verdict." *Id.* (quoting *Schneider v Pomerville,* 348 Mich 49, 54-55; 81 NW2d 405 [1957]).

The court found as fact that neither driver involved in the collision saw the single warning sign and that therefore the sign was ineffective in fulfilling its function to warn and educate motorists. Given these findings, and given further that the court found that ice was a proximate cause of the accident, this Court is left with the definite and firm conviction that the trial court erred in finding that defendant's failure to post adequate warning signs was not also a proximate cause of the accident. As noted before, but for *Pick's* holding regarding the duty to post warning signs, we would reverse.

Plaintiff also argues that the trial court erred in refusing to allow a substitute expert witness to

testify. We agree. Plaintiff's original expert witness announced two weeks before trial that he would not testify because of a conflict of interest. The parties informally agreed to a substitute. After several unsuccessful deposition attempts, plaintiff's counsel learned that defendant was not going to cooperate but was going to exclude the witness at trial.

The trial court granted defendant's motion to exclude the witness on the basis of the need to maintain the schedule of the court. In doing so, the trial court abused its discretion. Before imposing a sanction, such as barring a witness, several factors should be considered, including whether the violation was wilful or accidental; the party's history of refusing to comply with discovery requests or disclosure of witnesses; the prejudice to the party; the actual notice to the opposite party of the witness; and the attempt to make a timely cure. *Dean v Tucker,* 182 Mich App 27, 32; 451 NW2d 571 (1990). We see no evidence that any of these criteria weighed in favor of excluding plaintiff's substitute witness.

Plaintiff's offer of proof asserted that the expert witness would have testified about important maintenance procedures for the bridge, the fact that the bridge was a top priority, and whether a single warning sign on a 1.6-mile bridge constituted inappropriate posting of signs.

We cannot know exactly what the effect of that testimony might have been. It seems that the use of appropriately illuminated or electrical signs, intermittent or flashing signs, or just large signs would increase drivers' awareness and sense of danger. What driver has not slowed down upon seeing blazing electrical signs warning of danger, whether the driver had foreknowledge of ever present danger? Depending upon the quality and

credibility of the proffered expert testimony, the trial court's conclusion regarding proximate cause might have been affected. The erroneous exclusion of the expert testimony was not harmless. Were *Pick* not controlling with regard to the issue of governmental immunity, we would also reverse on evidentiary grounds.

Affirmed.

MICHAEL J. KELLY, P.J., concurred.

T. R. THOMAS, J. *(concurring)*. I agree with the result reached by the majority. I do not agree with its reasons. I am in accord with the panel of this Court that decided *Pick v Gratiot Co Rd Comm,* 203 Mich App 138; 511 NW2d 694 (1993), with regard to the issue of governmental immunity. I concur with the trial court that inadequate posting of signs was not a proximate cause of this accident. Also, I agree with my brothers that the trial court abused its discretion in refusing to allow a substitute expert witness to testify, but I would find this error to be harmless.

When analyzing a highway sign case within the context of the highway exception to governmental immunity, the first inquiry ought to be a determination of the purpose of the relevant sign. I believe there are two basic categories of highway signs, each of which has a specific purpose.

The purpose of the first category of highway signs is to control the flow of vehicular traffic over the improved portion of the highway. These signs affect the improved portion of the highway in that they are designed to avoid more than one user occupying a specific point thereon within a specific interval of time. In this category are traffic signals, stop signs, and any other sign that proposes to regulate highway time and space. The failure to

erect a sign from this category results in two otherwise prudently operated vehicles occupying the same space on the improved portion of the highway at the same point in time and thus the occurrence of a collision. With respect to this category, consistent with *Tuttle v Dep't of State Hwys,* 397 Mich 44; 243 NW2d 244 (1976), when the government undertakes to control the location of a vehicle on a highway at a specific interval of time, it undertakes a duty that is actionable for ordinary negligence and falls within the exception to governmental immunity.

The purpose of the second category of highway signs is to remind motorists of actual or potential dangers generally associated with the operation of all motor vehicles on the improved portion of a highway. These signs do not affect the improved portion of the highway because they warn of dangers that all vehicle operators ought to be educated about before entering a motor vehicle. In this category are signs that warn of ice, deer, children, curves, the presence of water, and any other sign that merely increases the awareness of what a prudent vehicle operator should already be anticipating. With respect to these signs, unless they are located on the improved portion of the highway in such a manner that their physical presence creates a hazard, governmental immunity applies consistent with the holding in *Scheurman v Dep't of Transportation,* 434 Mich 619; 456 NW2d 66 (1990), and now *Pick.*

In the case now before us, the claim is that the plaintiff was not adequately warned of ice forming on the improved portion of the road. The sign involved is an ice warning sign. Obviously, this sign does not control traffic. It reminds vehicle operators of what they already ought to know—the improved portion of the highway might be icy.

Further, the trial court found as a matter of fact in this case that neither driver saw the single warning sign present, that both drivers were experienced and aware that bridges tend to ice over in the winter, and that both drivers were aware that ice warning signs are generally placed near bridges. Given these facts, I fail to see how the inadequacy of the ice warning sign could be a proximate cause of this accident because this sign was designed to remind these drivers of what they already knew. Beyond that, in view of the fact that the evidence is contrary to a finding that the ice warning sign was on the improved portion of the highway—neither driver saw it—governmental immunity applies.

I subscribe to the analysis and conclusion of my brothers in determining that the trial court erred in refusing to allow a substitute expert witness to testify. However, I believe this error to be harmless because the subject matter of the proposed witness' testimony is not relevant to the resolution of this case. There is no cause of action for failing to remove natural accumulations of ice from a road surface. See *Stord v Dep't of Transportation*, 186 Mich App 693, 694; 465 NW2d 54 (1991). Further, whether a driver would slow down upon seeing blazing electrical signs warning of danger is pure conjecture. The plethora of warnings and signs found surrounding freeway construction zones does not seem to reduce the traffic speed to the legal limit for those zones.

For these reasons, I would affirm the judgment of the trial court.