Wendy D. **BURKHOLDER** and Jeffrey A. **Burkholder, Plaintiffs,**

v.

**LENAWEE COUNTY ROAD COMMISSION, Defendant.**

**No. 94–CV–71955–DT.**

United States District Court, E.D. Michigan, Southern Division.

Oct. 26, 1995.

Kevin J. Kenney, Sylvania, Ohio, for plaintiffs.

Joseph M. LaBella, Southfield, Michigan, for defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

Plaintiff Wendy Burkholder brought this action on May 19, 1994, seeking to recover for injuries she suffered when a pickup truck in which she was a passenger collided with a Norfolk & Southern train. In addition, her husband, co-Plaintiff Jeff Burkholder, has asserted a loss-of-consortium claim based on his wife's injuries.[1] Plaintiff alleges that Defendant Lenawee County Road Commission [2]. breached its duty to her by failing to place and maintain adequate warning devices at

---

1. Because Jeff Burkholder's claim derives entirely from his wife's injuries, this opinion hereafter refers to Wendy Burkholder as the sole "Plaintiff" in this action.

2. Lenawee County, named by Plaintiff in her initial complaint as a co-Defendant, was dismissed from the case without prejudice by this Court on February 2, 1995, due to Plaintiff's failure to pursue her claims against the County.

and leading up to the train crossing. Subject matter jurisdiction in this Court is premised on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1).

Defendant has a motion for summary judgment pending before the Court. Defendant contends that its governmental immunity under Michigan law is not abrogated by any alleged failure to place or maintain traffic control signs adjacent to roadways. Alternatively, Defendant argues that placement of the types of signs Plaintiff alleges should have been present at the train crossing would not have prevented the collision or Plaintiff's injuries.

Having reviewed the materials submitted by the parties, the Court is now prepared to rule on Defendant's motion. For the reasons set forth below, the Court hereby denies Defendant's motion for summary judgment.

## II. FACTUAL BACKGROUND

Plaintiff Wendy Burkholder was a passenger in a pickup truck that was struck by a Norfolk & Southern train at a railroad crossing on May 23, 1992, at approximately 1:14 p.m. At the time of the collision, the truck was travelling eastbound on Packard Road in Lenawee County. The driver of the truck, Wanda Heroy, was killed in the accident, and the driver's daughter, Christina Heroy Canfield, who was sitting in the middle of the front seat between the driver and Plaintiff, was severely injured.[3] In her complaint, Plaintiff alleges that she suffered multiple fractures of both legs, a shattered hip, and numerous internal injuries. Her husband and co-Plaintiff, Jeff Burkholder, seeks damages for loss of his wife's consortium.

The accident was investigated by two deputy sheriffs from the Lenawee County Sheriff's Department. Witnesses to the collision include the truck's surviving passengers[4] and the train's engineer, Floyd Miller. In addition, some local residents who were interviewed as part of the deputy sheriffs' investigation claimed that they heard the train's whistle, but did not see the collision.

Although the witnesses and investigators offer varying accounts, they agree on some details. First, weather conditions on the day of the accident were sunny and dry. Next, according to the deposition testimony and reports of the deputy sheriffs, the view of approaching trains from Packard Road was obstructed by trees located on private property, but this view became unobstructed once a vehicle approached to within 50 to 75 feet of the railroad crossing. Finally, Plaintiffs do not dispute that Defendant satisfied its duty under Michigan law to keep the roadway itself safe for vehicular travel.

The parties disagree, however, on the events leading up to the collision. Although Ms. Heroy, the driver of the pickup truck, clearly slowed down at some point before she reached the railroad crossing, testimony varies as to whether she "crept" up to the crossing or whether she was travelling quickly and slowed abruptly just as her truck reached the crossing. In addition, Plaintiff testified in her deposition that the pickup truck's radio was off, yet she did not hear the train's horn sound prior to the collision. However, the train engineer and local residents assert that the train's horn sounded as it approached the crossing.

As of the date of the accident, a sign located approximately 500 feet west of the train tracks on Packard Road warned of the approaching railroad crossing. A forty m.p.h. advisory speed plate was attached to the same sign post. In addition, Packard Road was imprinted with two sets of pavement marks, located approximately 500 and 300 feet west of the tracks, advising motorists of the crossing. Finally, a railroad crossing sign, or "crossbuck," was placed directly adjacent to the train tracks. There were no stop signs, stop-ahead signs, flashing lights or crossing gates at the site of the collision.

---

3. Ms. Canfield filed suit against Defendant Lenawee County Road Commission and the Norfolk & Southern Railroad in Lenawee County Circuit Court. Defendant apparently has been dismissed from that suit on the basis of governmental immunity.

4. Due to head injuries she suffered in the accident, Ms. Canfield claims to have no memory whatsoever of the events leading up to the collision.

Pursuant to its statutory responsibility, the Michigan Department of Transportation ("MDOT") conducted two "informal site reviews" of the Packard railroad crossing within the three years preceding the collision. These reviews did not result in any recommendations that Defendant take any action at that crossing. However, in response to an April, 1992, fatality at a Grand Trunk Railroad crossing elsewhere in Lenawee County, Defendant's Board of Commissioners issued a resolution calling for installation of stop signs at all County railroad crossings that did not already have active warning devices such as gates or lights.

Defendant's managing director, Orrin Gregg, developed a plan to implement this resolution. Because the fatality that led to the Board resolution had occurred at a Grand Trunk crossing, the plan called for stop signs and stop-ahead signs to be placed at these crossings first. The order of placement among the Grand Trunk crossings was determined by assessing traffic counts at the various crossings. However, once stop signs were installed at all Grand Trunk crossings, the order of sign placement among the remaining crossings, including the Norfolk & Southern crossings, was determined by geographic region. Thus, because of its geographic location within Lenawee County, the Packard Road crossing where the collision occurred did not yet have a stop sign at the time of the accident.

### III. ARGUMENTS OF THE PARTIES

Plaintiff contends that Defendant breached its duty under Michigan law to maintain Packard Road in a reasonably safe condition by failing to erect traffic signs that properly alert drivers to the allegedly ultrahazardous nature of the Norfolk & Southern railroad crossing. Moreover, Plaintiff argues that the signs Defendant has placed along Packard Road, and particularly the 40 m.p.h. advisory speed plate, actually contribute to the dangerousness of the crossing. Finally, Plaintiff asserts that Defendant's plan to place stop signs at all Lenawee County railroad crossings improperly failed to prioritize on the basis of the hazardous nature of each crossing. Because of all these failures, Plaintiff argues that the driver of the pickup truck was insufficiently warned of the dangers of the Norfolk & Southern train crossing, and thus she was unable to avoid the collision.

In response, and in support of its motion for summary judgment, Defendant contends that Michigan law grants county road commissions complete immunity from liability for any improper placement of, or failure to place, traffic signs along highways. In addition, Defendant argues that the undisputed facts surrounding the collision reveal that a different set of signs along Packard Road would not have affected the conduct of the driver of the pickup truck. In particular, Defendant alleges that the driver slowed to a crawl or perhaps even stopped on the tracks, and infers that the driver was aware of the need to stop at the crossing despite the lack of a stop sign. Consequently, Defendant asserts its freedom from liability because any failure on its part was not a cause of the collision.

### IV. ANALYSIS

Defendant's motion for summary judgment is premised on two theories, lack of duty and lack of causation. First, Defendant argues that Michigan law limits the so-called "highway exception" to governmental immunity to failure to properly maintain the roadway itself, as opposed to signs adjacent to the roadway. Accordingly, because Plaintiff alleges only that Defendant failed to properly place signs that adequately warn of the approaching railroad crossing, Defendant contends that governmental immunity shields it from liability for such a failure. Second, Defendant argues that the undisputed facts of this case reveal that a different placement of signs would not have prevented the accident. These facts, according to Defendant, establish that the pickup truck's driver was aware of the approaching railroad crossing and in fact slowed her vehicle to a "creeping" speed before reaching the crossing. Given these facts, Defendant contends that Plaintiff cannot demonstrate a causal relationship between Defendant's alleged failure and the collision.

## A. The Standards Governing Consideration of a Motion for Summary Judgment.

The applicable Federal Rule of Civil Procedure dictates that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court decisions—*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the review of motions for summary judgment. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[5] According to the *Celotex* Court:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

After reviewing the above trilogy of cases, the Sixth Circuit announced a set of principles to be applied to motions for summary judgment:

[*] Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

[*] The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

[*] This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for dis-

covery, has no evidence to support an essential element of his or her case. * * *

[*] The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

[*] The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

[*] The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (footnotes with citations omitted). The Court will apply these principles in its evaluation of Defendant's motion for summary judgment.

## B. Michigan's "Highway Exception" to Governmental Immunity Applies to Defendant's Allegedly Improper Placement of Traffic Signs Along Packard Road.

Michigan law confers upon governmental agencies broad immunity from tort liability for actions taken in furtherance of governmental functions. *See* Mich.Comp.Laws § 691.1407. The Michigan legislature has carved out a few limited exceptions to this grant of governmental immunity, however, including the so-called "highway exception." This exception provides:

> Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for pub-

---

**5.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright et al., *Federal Practice & Procedure*, § 2727, at 35 (Supp.1994).

lic travel. Any person sustaining bodily injury or damage to his or her property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him or her from the governmental agency.

Mich.Comp.Laws § 691.1402(1). This same statutory provision then expressly limits the duty and liability of certain governmental agencies, including Defendant:

> The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

Mich.Comp.Laws § 691.1402(1).

Because it is undisputed that the roadway itself was "reasonably safe" on the date the collision occurred, the debate between the parties concerns the Defendant's duty to erect signs along the road that appropriately warn of the approaching railroad crossing. The dispositive question in this Court's consideration of Defendant's governmental immunity defense, therefore, is whether the duty to maintain "the improved portion of the highway" extends to traffic signs that are placed adjacent to the highway in order to advise motorists of road conditions.

Although the Michigan Supreme Court has not yet squarely confronted this specific question, several recent Michigan Supreme Court cases address the extent of the maintenance duties encompassed within the highway exception to governmental immunity. First, in *Roy v. Department of Transp.*, 428 Mich. 330, 408 N.W.2d 783 (1987), the court held that the highway exception does not apply to a bicycle path adjacent to but separate from a highway. Citing the Michigan Motor Vehicle Code's exclusion of "devices exclusively moved by human power" from its definition of a "vehicle," Mich.Comp.Laws § 257.79, the court reasoned that bicycle paths are not "designed for vehicular travel," and consequently are not covered under the highway exception. 428 Mich. at 338–40, 408 N.W.2d at 787–88. The court also found that the highway exception "does not reveal a legislative purpose to protect bicyclists in general." 428 Mich. at 341, 408 N.W.2d at 788. Instead, the court found that the statutory waiver of immunity focuses on particular locations: "[t]he criterion used by the Legislature was not based on the class of travelers, but the road on which they travel." 428 Mich. at 341, 408 N.W.2d at 788. *Compare Gregg v. State Highway Dep't*, 435 Mich. 307, 309, 458 N.W.2d 619, 619 (1990) (holding that the highway exception *does* apply to a bicycle path located "on the inner portion of the paved shoulder of a state highway").

Next, in *Scheurman v. Department of Transp.*, 434 Mich. 619, 456 N.W.2d 66 (1990), the court held that the government's duty under the highway exception does not extend to the installation and maintenance of streetlights along roads. 434 Mich. at 633, 456 N.W.2d at 72. Three justices subscribed to the lead opinion's rationale that streetlights are not covered by the highway exception because they do not physically lie within the "improved portion of the highway designed for vehicular travel" as expressly stated in the exception's statutory language. 434 Mich. at 632–33, 456 N.W.2d at 72. The deciding vote, however, was cast by Justice Boyle, who issued a brief concurring opinion:

> I join in both the rationale and result of the [lead] opinion, with the understanding that it does not preclude the application of [the highway exception] in cases alleging a failure to 'repair and maintain' installations that are integral to, if not part of, the 'improved portion of the highway designed for vehicular travel,' *such as traffic lights and signs.*

434 Mich. at 637, 456 N.W.2d at 74 (emphasis added) (citations omitted). Consequently, the lead opinion did not gain the support of a true majority of the court for its assertion that the highway exception imposes no duty to maintain structures lying outside the physical roadbed of a highway.

In the companion case of *Prokop v. Wayne County Rd. Comm'n*, the court found that liability could not be imposed on a governmental agency for its failure to remove a

hedge located on private property that was obstructing the view at an intersection. 434 Mich. at 635, 456 N.W.2d at 73. This conclusion followed readily from the lead opinion's reasoning that the highway exception waives governmental immunity only for defective conditions upon the "improved portion of the highway." 434 Mich. at 635, 456 N.W.2d at 73. Moreover, this holding was entirely consistent with Justice Boyle's concurrence, because the hedge could not be considered an installation "integral to" the improved portion of the highway.[6]

Finally, the Michigan Supreme Court's most recent case involving the highway exception, *Chaney v. Department of Transp.*, 447 Mich. 145, 523 N.W.2d 762 (1994), reveals that the court has not yet arrived at a unified view of the scope of that exception. Although five justices agreed that the exception does not encompass "a concrete bridge abutment and adjoining guardrail adjacent to, but beyond the shoulder of, a state trunkline entrance ramp and overpass," 447 Mich. at 151, 523 N.W.2d at 762, those five justices issued four opinions and expressed three different conceptions of the scope of the exception.

Justice Brickley, in the lead opinion for the court, surveyed the court's prior cases construing the highway exception and found that they established a "rule" of potential liability for "(1) installations physically located within that traveled or paved portion of a highway designed for vehicular travel, or (2) some installations, even those physically located beyond the traveled or paved portion of a highway, that directly and integrally affect safe vehicular travel on this improved portion." 447 Mich. at 158, 523 N.W.2d at 765. Justice Boyle's concurring opinion, echoing her earlier concurrence in *Scheurman*, reasoned that the waiver of governmental immunity extends to "traffic signs or traffic signals necessary for safe vehicular travel," but re-

jected as "imprecise" the lead opinion's broader test of the extent of the highway exception. 447 Mich. at 174–75, 523 N.W.2d at 772–73. Finally, as in *Scheurman*, three justices again advocated a literal construction of the highway exception statute, reasoning that its plain language limits the waiver of governmental immunity to conditions physically within the improved portion of the road. 447 Mich. at 166, 523 N.W.2d at 769 (Riley, J., concurring in part and dissenting in part, joined by Griffin, J.); 447 Mich. at 177–78, 523 N.W.2d at 774 (Cavanagh, C.J., concurring) (agreeing with Justices Brickley and Boyle from a "policy standpoint," but finding that a narrower interpretation is dictated by statutory language and case law).[7]

These Michigan Supreme Court cases, then, suggest the contours of Defendant's duty to maintain the highways under its jurisdiction, but do not resolve the particular question whether the highway exception encompasses the duty to maintain traffic control signs located adjacent to a road. In contrast, three panels of the Michigan Court of Appeals have considered this specific issue. First, in *Pick v. Gratiot County Rd. Comm'n*, 203 Mich.App. 138, 511 N.W.2d 694, 696 (1993), although the court recognized that it was "not so clear ... whether the improved portion of the highway includes improvements that serve as integral parts of the highway, such as signs and shoulders," the court found that the defendant road commission could not be held liable for its alleged failure to install traffic signs or other devices at an intersection at which the view was obstructed by surrounding vegetation. The court reasoned that traffic signs were indistinguishable from streetlights, and concluded that *Scheurman* dictated its finding of no liability. 511 N.W.2d at 696.

Next, in *Colovos v. Department of Transp.*, 205 Mich.App. 524, 517 N.W.2d 803 (1994),

---

6. Consequently, Plaintiff here cannot, and does not, argue that Defendant is subject to liability for the obstructed view of approaching trains due to trees located on private property. Instead, Plaintiff maintains that the obstructed view is one factor that Defendant must consider when determining whether its signs appropriately warn approaching motorists of the hazardous train crossing.

7. In contrast, the dissent in *Chaney* advocated a much broader reading of the highway exception, arguing that it should impose a duty to provide safety features "reasonably necessary to maintain the improved portion reasonably safe and fit for travel." 447 Mich. at 193–94, 523 N.W.2d at 781 (Levin, J., dissenting, joined by Mallett, J.).

the court found that the highway exception does not waive immunity for failure to install traffic signs warning of ice on a bridge. The *Colovos* court expressed its concern that the decision in *Pick* could not be squared with a 1976 Michigan Supreme Court case finding that a governmental agency could be held liable for its negligent failure to install traffic signals at an intersection. 517 N.W.2d at 804 (citing *Tuttle v. Department of State Highways,* 397 Mich. 44, 243 N.W.2d 244 (1976)). However, the *Colovos* court noted that it was constrained by a Michigan court administrative order to follow *Pick,* and thus concluded that the government was immune from liability. 517 N.W.2d at 804.

Finally, in *Cox v. City of Dearborn Heights,* 210 Mich.App. 389, 534 N.W.2d 135 (1995), the court found that the defendant municipality could be held liable for its failure to install adequate stop signs at an intersection. The court first noted that the portion of the statutory highway exception limiting the government's maintenance and repair duties to the "improved portion of the highway" expressly applies only to the state and county road commissions. 534 N.W.2d at 137. The court then reasoned that *Pick* was distinguishable, because the defendant in *Pick* was a county road commission while the defendant in the instant case was a municipality. 534 N.W.2d at 137–38.

■ Turning now to the motion before this Court, Defendant argues that *Pick* controls this Court's interpretation of Michigan's highway exception to governmental immunity, at least in the absence of a contrary Michigan Supreme Court opinion directly on point.[8] Plaintiff, on the other hand, contends that this Court is not bound to follow *Pick* if it believes that the Michigan Supreme Court would decide otherwise. The Sixth Circuit has endorsed Plaintiff's position, finding that "an intermediate appellate court's judgment that announces a rule of law is 'a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the

highest court of the state would decide otherwise.'" *FL Aerospace v. Aetna Casualty & Surety Co.,* 897 F.2d 214, 218–19 (6th Cir. 1990) (quoting from *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)).

■ While this Court readily confesses its reluctance to add its view to this contentious and as yet unsettled area of Michigan law, the Court simply is not persuaded that *Pick* properly construes the highway exception. Just as importantly, in light of the fact that the Michigan Supreme Court has granted leave to appeal in *Pick, see Pick v. Szymczak,* —— Mich. ——, 534 N.W.2d 520 (1995), this Court is not persuaded that Michigan's highest court will approve of *Pick*'s rationale. The *Pick* court rested its holding entirely on its inability to distinguish the streetlights under consideration in *Scheurman* from the traffic signs under consideration in *Pick.* Yet, this Court finds an important difference between streetlights and traffic signs. Streetlights are placed along a road for the benefit of all who use either the road or nearby areas; this benefit accrues not only to motorists, but also to bicyclists, pedestrians, and establishments located along the road. In contrast, traffic signs—and in particular, the traffic signs at issue in the instant case—exist *solely* in order to enhance the safe use of the roadway by motorists. Thus, traffic signs serve no other purpose than to maintain safe driving conditions upon the "improved portion of the highway designed for vehicular travel." As such, they are more integral to "safe and convenient ... public travel" than streetlights or, for that matter, any other installation that does not lie physically within the roadway.

Accordingly, either a "location-based" or "purpose-based" conception of the highway exception dictates inclusion of traffic signs. Although traffic signs may not lie within the roadway itself, they are located immediately adjacent to the roadway, and refer only to conditions upon that roadway. Similarly,

---

8. In fact, Defendant seems to be under the mistaken impression that this Court is legally *compelled* to follow *Pick.* Defendant bases this contention on a Michigan court rule and an administrative order issued by the Michigan Supreme Court, both of which dictate that Michigan courts must accord binding effect to Michigan Court of Appeals decisions. However, this Court clearly is not bound by such state court administrative orders and rules.

traffic signs are designed for the sole purpose of enhancing safe travel on the roadway itself.

Moreover, the statutory language of the highway exception comports with the Court's view that Defendant's governmental immunity does not extend to a failure to maintain appropriate traffic signs. The provision that limits liability for county road commissions distinguishes between the "improved portion of the highway," on one hand, and such separate installations as sidewalks and crosswalks, on the other. *See* Mich.Comp.Laws § 691.1402(1). In this spectrum of installations on or around highways, traffic signs are more closely linked to the improved portion of the highway than to neighboring structures such as sidewalks. Indeed, as discussed above, traffic signs are more closely associated with the improved portion of the highway than *any other* separate installation that comes to mind. Accordingly, the Court finds that the duty to maintain traffic signs is part and parcel of the statutory duty to maintain the roadway.

This Court's view admittedly cannot be completely reconciled with the narrow construction of the highway exception advocated by three Michigan Supreme Court justices in *Scheurman.* Traffic signs obviously do not physically lie within the roadbed, but rather lie directly adjacent to that roadbed. However, this narrow construction has never gained the support of a majority of the Michigan Supreme Court. This Court, therefore, sees no reason to treat the lead opinion in *Scheurman* as though it conclusively resolves the question presented in the instant matter, particularly since Justice Boyle, who cast the deciding vote, specifically refused to accept the lead opinion's limitation upon the exception to immunity and indicated that she would find traffic signs encompassed within the statutory exception to immunity.

Consequently, this Court finds that Defendant's duty to keep its highways "in condition reasonably safe and fit for travel" encompasses the duty to install and maintain appropriate traffic signs adjacent to those highways. Because Defendant can be held liable for its failure to install and maintain appropriate traffic signs, should Plaintiff establish such a failure, Defendant is not entitled to summary judgment on the basis of governmental immunity.

**C.** ***The Undisputed Facts Do Not Establish the Lack of a Causal Connection Between Defendant's Alleged Failure to Install Appropriate Traffic Signs and Plaintiff's Injuries.***

Defendant's second argument in support of its motion for summary judgment—*i.e.*, that a different set of traffic signs would not have prevented the collision—is more readily addressed. Defendant contends that the deposition testimony of the injured Plaintiff and the train engineer establishes that the pickup truck had slowed significantly before it reached the railroad crossing. Defendant also claims that the deposition testimony of the truck's other passenger, the deceased driver's daughter, shows that it was the "habit" of the driver to always stop at train crossings, regardless of the presence of a sign instructing her to stop. Defendant therefore asserts that the allegedly improper 40 m.p.h. advisory speed plate did not prevent the truck from slowing down as it approached the railroad crossing, and that placement of a stop sign at the crossing would not have affected the driver's intention to stop at the crossing.

In response, Plaintiff offers the deposition testimony of an expert who contends that the 40 m.p.h. advisory speed plate creates the false impression in the minds of drivers that they may safely approach the crossing at that speed. In fact, that expert believes that 15 m.p.h. would be a more appropriate speed. Plaintiff also points to the deposition testimony of Defendant's chief engineer, who expressed his surprise that an advisory speed panel was placed at that crossing because that "[t]hat is not a typical use" of such a sign. In addition, Plaintiff points out the conflicting evidence regarding the speed of the truck as it approached the crossing: some deposition testimony suggests that the driver slowed her truck only as she reached the crossing. Finally, Plaintiff argues that evidence of the driver's usual habit is insufficient to merit summary judgment on a fact-

intensive issue such as causation. Indeed, because the driver clearly failed to stop before reaching the crossing in this case, evidence of her habit seems to support Plaintiff's contention that the traffic signs in place at the time of the accident inadequately warned drivers of the approaching danger.

■ Given these disputed facts, the Court finds that Defendant has not met its burden of showing that no genuine issues of material fact remain concerning the effect that a different set of signs might have had on the driver's behavior in this case. Plaintiff has offered sufficient evidence to raise a genuine question whether the combination of a different advisory speed plate and a stop sign at the railroad crossing might have prevented the collision. Consequently, Defendant is not entitled to summary judgment on the ground that Plaintiff cannot establish the causal connection necessary to prove her case.

## V. CONCLUSION

Because the Court finds that governmental immunity under Michigan law does not extend to Defendant's alleged failure to place traffic signs that appropriately warn of the approaching Norfolk & Southern train crossing on Packard Road, and because the Court cannot determine under the present record whether a different set of traffic signs might have prevented Plaintiff's injuries, Defendant is not entitled to summary judgment. Accordingly, IT IS HEREBY ORDERED that Defendant's motion for summary judgment be DENIED.