WECHSLER v WAYNE COUNTY ROAD COMMISSION

Docket No. 165519. Submitted August 1, 1995, at Detroit. Decided February 27, 1996, at 9:10 A.M. Leave to appeal sought.

Ralph A. and Patty Johnson, husband and wife, brought an action in the Wayne Circuit Court against the Wayne County Road Commission, seeking damages for injuries sustained by Ralph Johnson and for Patty Johnson's loss of consortium in connection with a two-car collision at the intersection of Wick-Goddard Road and Middlebelt Road. Ralph Johnson died while the action was pending, and Louis Wechsler, as personal representative of Johnson's estate, was substituted in Johnson's place as plaintiff. Ralph Johnson was driving east on Wick-Goddard, a four-lane road with no center lane for left turns, intending to make a left turn onto Middlebelt. At the intersection, the traffic light for cars traveling east on Wick-Goddard had red, yellow, and green phases. Because of the heavy traffic, Johnson had to wait through four or five light changes before he reached the front of the line of vehicles turning left from eastbound Wick-Goddard onto Middlebelt. As Johnson was making his left turn, his vehicle collided with a vehicle that was westbound on Wick-Goddard. Following a bench trial, the court, Claudia House Morcom, J., granted a judgment for the plaintiffs, determining that the absence of a left-turn lane, a left-turn light, or both for traffic turning from Wick-Goddard onto Middlebelt constituted a failure to maintain the highway in reasonable repair so that it was reasonably safe and convenient for public travel, thus giving rise to liability under the highway exception to governmental immunity. MCL 691.1402(1); MSA 3.996(102)(1). The defendant appealed.

The Court of Appeals held:

1. The defendant preserved governmental immunity as a defense by raising it as an affirmative defense in its answer to the plaintiffs' complaint.

2. The trial court improperly considered evidence of a failure to construct a left-turn lane as a basis for negligence on the

REFERENCES

Am Jur 2d, Highways §§ 345, 346, 348.
See ALR Index under Highways and Streets.

part of the defendant. The highway exception requires the state or a county road commission to keep a roadway, as constructed, reasonably safe for vehicular travel; it does not require that an existing highway be improved, augmented, or expanded. No case authority or statutory language supports the concept that failure to construct additional lanes of traffic can provide a basis for imposing liability on a governmental agency having jurisdiction over a highway.

3. The trial court erred in determining that the absence of a left-turn signal was a basis for liability. With respect to traffic signs or signals, the highway exception abrogates governmental immunity at points of special danger to motorists. The evidence in this case does not indicate that the intersection was a point of special danger. Additionally, the adequacy of existing traffic signs or signals, as it relates to negligence under the highway exception, is a question of law, and generally appropriate signals, such as the existing signal at the intersection in this case, may not be found legally deficient merely because superior alternatives were available.

4. Regardless of whether Ralph Johnson disobeyed a red light in turning left at the intersection or the second motorist strayed past the center line and into Johnson's lane, a matter left unresolved by the trial court, the absence of a left-turn lane or a left-turn light was not the proximate cause of the accident. In either case, the accident was proximately caused by one of the two motorists.

Reversed.

WAHLS, J., dissenting, stated that the defendant failed to preserve governmental immunity as a defense by failing to move for summary disposition based on immunity or raising the issue of immunity at trial, that the question whether the defendant should have constructed a left-turn lane, as relevant to the reasonableness of the defendant's actions with respect to its obligation to maintain highways, is properly for the trier of fact, and that the majority failed to properly defer to the trial court with respect to the findings that the absence of a left-turn signal made the intersection unsafe and proximately caused the accident. The defendant failed to preserve the issue of excessiveness of the damage award by not moving for remittitur in the trial court.

1. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION.

The highway exception to governmental immunity from tort liability requires the state or a county road commission having

jurisdiction over a highway to keep the highway, as con-
structed, reasonably safe for vehicular travel; liability may not
be based on a failure to improve, augment, or expand an
existing highway (MCL 691.1402[1]; MSA 3.996[102][1]).

2. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — TRAFFIC
   SIGNS AND SIGNALS.

   The adequacy of a traffic sign or signal on a highway, as it relates
   to a claim that the state or a county road commission has
   failed to maintain the highway in reasonable repair, is a
   question of law; signs or signals of the generally appropriate
   type may not be found legally deficient merely because superior
   alternatives were available (MCL 691.1402[1]; MSA 3.996[102]
   [1]).

3. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION.

   The highway exception to governmental immunity does not trans-
   form governmental agencies having jurisdiction of highways
   into insurers or guarantors of motorist safety; if an existing
   highway is maintained so as to be reasonably safe, liability may
   not be established by demonstrating that the highway can be
   made safer still (MCL 691.1402[1]; MSA 3.996[102][1]).

*Mark Granzotto, Robert L. Hamburger,* and *Stephen M. Taylor,* for the plaintiffs.

*Jennifer M. Granholm,* Corporation Counsel, and *Ellen E. Mason,* Assistant Corporation Counsel, for the defendant.

Before: MARKMAN, P.J., and WAHLS and F. M. MESTER,* JJ.

MARKMAN, P.J. Plaintiffs filed a negligence action, asserting that defendant failed in its duty to maintain a highway "in reasonable repair so that it is reasonably safe and convenient for public travel." MCL 691.1402; MSA 3.996(102). The case was tried to the bench in the Wayne Circuit Court,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

which granted judgment in favor of plaintiffs. We reverse.[1]

## I. FACTS

### A. UNDISPUTED FACTS

Most of the material facts are undisputed. The plaintiffs' decedent, Ralph Andrew Johnson, was on his way home from Detroit Metropolitan Airport, driving his automobile east on Wick-Goddard Road, intending to make a left turn at the intersection with Middlebelt Road. Traffic at the intersection was heavy and Johnson had to wait through four or five changes of the light to reach the front of the line of vehicles turning left. Originally, ten to twelve vehicles had been ahead of him and all made left turns without incident.

The intersection in question is governed by an ordinary traffic light; there is no special signal for cars turning left from eastbound Wick-Goddard onto Middlebelt. Wick-Goddard is a four-lane road with two lanes in each direction.

The cars ahead of Johnson had apparently nego-

---

[1] On the view we take of this case, we are called upon to determine the proper application of the statutory doctrine of governmental immunity. MCL 691.1407; MSA 3.996(107). Because we find the governmental immunity issue dispositive, we have no occasion to discuss the other questions raised by the appellant. We do note, however, that regarding the question of remittitur, we would not likely be prepared to say that an award of $4 million for pain and suffering to Ralph Johnson, whom the trier of fact determined suffered through multiple surgeries in the course of progressive medical deterioration attributable to injuries arising in this accident, and $2 million for loss of consortium to a wife who spent months trying to nurse her injured husband back to health, was outside the range of the proofs. *Palenkas v Beaumont Hosp,* 432 Mich 527; 443 NW2d 354 (1989). Mr. and Mrs. Johnson indisputably suffered enormously from the accident during the final two years of his life. Nor are we convinced that the trial court clearly erred in its fact findings to the effect that Ralph Johnson's subsequent physical problems were proximately caused by the accident. *Balwinski v Bay City,* 168 Mich App 766; 425 NW2d 218 (1988).

tiated their left turns when the traffic signal was yellow. Because of the heavy traffic, there were insufficient spaces between vehicles going west on Wick-Goddard to permit left turns when the signal was green. However, when the signal was yellow, the westbound cars would usually stop, allowing one or two eastbound vehicles to then complete a left turn onto Middlebelt.

In making his left turn, Johnson's vehicle collided head-on with a Dodge cargo van driven by Ronnie Raymond. The accident occurred at approximately 7:30 P.M. on September 29, 1988. Sunset had occurred eleven minutes earlier, at 7:19 P.M. Moonrise was not due to occur until 9:18 P.M. There was no precipitation, or any indication of other adverse weather conditions (Detroit Free Press, September 29 and September 30, 1988, page 2A).

In consequence of the collision, Ralph Johnson was seriously injured, necessitating a succession of surgeries that, because of Johnson's already debilitated physical condition, eventually led to his death from heart failure. Johnson's wife, Patty, sued for loss of consortium and there are no legal issues regarding her claim that are not derivative of the claim made by Ralph Johnson. Accordingly, the remainder of this opinion will treat only the claim on behalf of decedent Ralph Johnson. *Oldani v Lieberman,* 144 Mich App 642, 646; 375 NW2d 778 (1985).

### B. DISPUTED FACTS

A disputed fact concerns the manner in which the accident occurred. Ronnie Raymond testified that he was proceeding west on Wick-Goddard Road when Ralph Johnson suddenly turned in front of him and that Raymond had insufficient reaction

time to avoid the resulting collision. For his part,
Johnson did not recall what occurred after he
reached the front of the line of cars waiting to
turn left from Wick-Goddard onto Middlebelt, but
several independent witnesses testified that it was
not Johnson's vehicle, but rather Raymond's, that
crossed the center line immediately before the
collision. Decedent testified that he was unable to
see approaching traffic clearly because there was a
tractor-trailer opposite him and that he initiated
his left turn only when the traffic signal turned
red.[2]

### C. PLAINTIFFS' LIABILITY THEORY

Plaintiffs' liability theory is predicated on the
notion that the intersection is defective because
there is no left-turn lane and no left-turn signal
that would permit drivers on Wick-Goddard Road
to make a left turn while all other traffic is stopped.

### D. FINDINGS BY TRIER OF FACT

The trier of fact adopted the testimony of traffic
engineers who suggested that the addition of a
left-turn phase to the traffic signal would reduce
the accident rate at such intersections by fifty-six
percent and that, according to generally accepted
criteria, this intersection should have been desig-
nated by the Wayne County Road Commission as
meeting the threshold for installation of such a
signal. The trier of fact further concluded that
plaintiffs met their burden of establishing that the

---

[2] The area in question is level and there are no permanent physical
obstructions to visibility at the intersection. The tractor-trailer, which
plaintiffs' decedent claimed blocked the view of oncoming traffic, was
only a temporary condition and clearly not part of the "improved
portion of the highway" designed for vehicular travel, for which
defendant has the responsibility to maintain. *Chaney v Dep't of
Transportation,* 447 Mich 145; 523 NW2d 762 (1994).

highway was not reasonably safe and fit for public travel, that defendant knew or should have known of this condition, and that this condition was the proximate cause of the accident and the resulting injuries and damages suffered by plaintiffs. The trier of fact, however, did not resolve precisely how the accident occurred, that is, whether Mr. Raymond's version of the accident was correct as opposed to that of the independent witnesses.

## II. ANALYSIS

We find the issue of governmental immunity dispositive, reverse the trial court's judgment, and remand for entry of an order dismissing the action.

### A. PRESERVATION OF ISSUE

A threshold issue concerns plaintiffs' claim that the defense of no actionable duty (governmental immunity) was not preserved, because defendant did not raise the defenses of lack of duty or governmental immunity below. The record contradicts this assertion. On October 17, 1990, Wayne County filed its timely answer and affirmative defenses to plaintiffs' complaint. Affirmative defense number eleven asserts: "Defendant is immune by operation of the doctrine of governmental immunity." This fulfilled defendant's obligation to plead governmental immunity as an affirmative defense. *Patterson v Kleiman,* 199 Mich App 191; 500 NW2d 761 (1993), aff'd but modified on other grounds 447 Mich 429; 526 NW2d 879 (1994).[3]

---

[3] The defendant clearly could have done much more to focus attention on the issue of threshold liability. Reasonable practice would have dictated either a motion for summary disposition, MCR 2.116(C)(7), before or certainly after filing the answer or at the conclusion of discovery, or a motion for involuntary dismissal, MCR 2.504(B)(2), at

### B. STATUTORY HIGHWAY EXCEPTION

The highway exception to governmental immu-
nity, MCL 691.1402; MSA 3.996(102), provides in
pertinent part that "[e]ach governmental agency

the close of plaintiffs' proofs or the completion of defense proofs and
before argument. Both sides needlessly subjected themselves to time-
consuming and expensive trial preparation and trial because the
court was never specifically asked to consider the immunity doctrine.
We merely recognize that, by pleading governmental immunity as an
affirmative defense, defendant did the minimum procedurally *re-
quired* to preserve the issue. *Hillman's v Em 'N Al's,* 345 Mich 644;
77 NW2d 96 (1956).

The dissent would hold that defendant, to preserve the issue of
governmental immunity, having pleaded governmental immunity as
an affirmative defense in its first responsive pleading, either had to
move for summary disposition before trial, for a directed verdict at
trial, or else introduce evidence at trial regarding the scope of the
duty owed by defendant to plaintiffs' decedent. We demur.

Summary disposition and directed verdict are procedural devices
for expediting the resolution of issues otherwise preserved. No author-
ity is cited, and we are aware of none, that purports to require either
motion in order to guarantee a right of appellate review of an issue
already properly preserved by being raised as an affirmative defense
in the first responsive pleading. Either action will suffice to preserve
the defense, *Hudson v Lindsay,* 13 Mich App 671, 676; 164 NW2d 731
(1968), rev'd on other grounds 383 Mich 126; 174 NW2d 822 (1970);
both are not required. Nor did defendant waive the issue through any
issue-limiting language in a pretrial conference order. MCR 2.401.

Immunity provided by law is an affirmative defense that must be
raised in a governmental agency's responsive pleading. *Gibson v
Grand Rapids,* 162 Mich App 100, 103; 412 NW2d 658 (1987). We have
found no rule or case authority, and none is cited by the dissent, that
imposes any additional requirement as a precondition to reliance on
this defense, such as a motion for summary disposition or a directed
verdict. While there might be situations, as by subsequent failure to
request an instruction incorporating such legal theory in a case tried
to a jury, where the issue might thereafter be deemed thus waived,
MCR 2.516(C), this case was tried to the bench and nothing constitut-
ing a waiver of the affirmative defense is even alleged, let alone
supported by controlling authority. Because the burden of establish-
ing waiver would be on plaintiffs, this is tantamount to abandonment
of the claim of waiver. *Mitcham v Detroit,* 355 Mich 182, 203; 94
NW2d 388 (1959).

Regarding the question of duty, which the dissent accurately char-
acterizes as the issue raised when the affirmative defense of govern-
mental immunity is pleaded, that is a question of law for the court.
*Moning v Alfono,* 400 Mich 425, 436-437; 254 NW2d 759 (1977). Issues
of law are not resolved on the basis of evidentiary presentations.

having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel." In finding that the defendant road commission could be held liable for plaintiffs' damages, the trial court adopted the suggestion made in expert testimony that a left-turn lane, a left-turn signal, or both should have been installed at this intersection. As we will explain later in this opinion, an agency's statutory duty may include the installation of suitable traffic-control signals and signs. However, we find that the trial court erred as a matter of law in determining that defendant had a duty to install a left-turn lane because such installation is not encompassed within the plain language of MCL 691.1402; MSA 3.996(102).

The statute requires that the authority "having jurisdiction of a highway shall *maintain* the highway in reasonable repair." MCL 691.1402(2); MSA 3.996(102)(2) (emphasis supplied). The verb "maintain" is not a legal term of art but rather an ordinary English word that, in this context, denotes "to keep in a state of repair, efficiency, or validity; to preserve from failure or decline." *Webster's Third New International Dictionary,* Unabridged Edition, p 1362 (1965). The salient fact about this definition is that it is distinct from the concept of "improve," "augment," or "expand."

The Legislature thus did not purport to demand of governmental agencies having jurisdiction of highways that they improve or enhance existing highways, as by widening existing lanes or banking existing curves; that they augment existing highways, as by adding left-turn lanes; or that existing highways be expanded, as by adding new travel lanes or extending a highway into new territory. The only statutory requirement and the only mandate that, if ignored, can form the basis

for tort liability is to "maintain" the highway in reasonable repair.

Thus, this Court has previously recognized that highway authorities are under no statutory obligation to reconstruct a highway whenever some technological safety advancement has been developed. Rather, the focus of the highway exception is on maintaining what has already been built in a state of reasonable repair so as to be reasonably safe and fit for public vehicular travel. *Hall v Dep't of State Hwys,* 109 Mich App 592, 605; 311 NW2d 813 (1981).

No case authority and no statutory language supports the concept that failure to construct additional lanes of traffic can provide a basis for imposing liability on a governmental agency having jurisdiction over a highway. Rather, the contrary is the rule. *Id.* Whether to build a highway in the first instance, or whether to expand an existing highway, is a political determination, the power to make which has not been delegated by the immunity statute or its highway exception to triers of fact in civil litigation.[4]

A construction of the governmental immunity statute that purports to recognize such a transfer of power would give rise to serious constitutional problems under Const 1963, art 9, § 2, which provides that "the power of taxation shall never be surrendered, suspended, or contracted away." If Wayne County can be required by the judiciary to construct a left-turn lane at the Wick-Goddard/Middlebelt intersection, the Department of Transportation can equally be compelled to expand I-96 to six lanes along its entire length in order to relieve

---

[4] While a particular decision to "improve," "augment," or "expand" a highway may be prudent and advisable, the decision nevertheless is for persons entrusted with the expenditure of taxpayer resources, not the courts.

potential traffic congestion that may cause impatient motorists to rashly seek nonexistent openings on the roadway, resulting in accidents. Whether the benefits of such an expenditure outweigh its costs is a calculation more appropriately made by accountable public officials, not by the courts.

The far more reasonable interpretation of the highway exception is that an agency having jurisdiction must keep a roadway, *as constructed,* reasonably safe for vehicular travel.[5] The underlying assumption is that operators of motor vehicles traveling on these roadways will make necessary efforts to adhere to ordinary traffic rules. MCL 257.627(1); MSA 9.2327(1). Accordingly, we find that the trial court improperly considered evidence of failure to construct a left-turn lane as a basis for negligence on the part of defendant. On the other hand, if we concluded that the trial court properly considered evidence of the failure to install a left-turn signal in its determination whether defendant was negligent, we ordinarily would be inclined to remand for reconsideration of this matter with respect to the issue of signage only. However, in view of our finding that defendant did not breach its statutory duty in this case by failing to install the left-turn signal, there is no need for us to resolve the issue whether such evidence was properly considered.[6]

---

[5] MCL 691.1402(2); MSA 3.996(102)(2) refers to maintenance of "the" highway. Such language reinforces the notion that the highway being referenced is the highway already in being, not the ideal or the safest possible highway that might have been constructed.

[6] See, e.g., *Cox v Dearborn Heights,* 210 Mich App 389, 393; 534 NW2d 135 (1995), which distinguishes between the obligations of municipalities and the obligations of state and county road commissions in the maintenance of highways. Arguably, however, *Cox* speaks to this subject only in *dictum* (with regard to county road commissions) and itself recognizes the lack of definitive precedent by adopting the reasoning of a nonmajority Supreme Court opinion. *Id.* at 396. See also *Pick v Gratiot Co Rd Comm;* 203 Mich App 138, 141; 511

### C. SIGNALS AND SIGNS

Though the law is unsettled with respect to the state's or a county road commission's obligation to install suitable traffic-control signals and signs in support of its duty to maintain highways in a condition "reasonably safe and convenient for public travel," n 6, *supra,* we will assume for purposes of the instant case that some such duty exists. On this assumption, road commissions cannot simply disregard danger and avoid liability by ignoring the need to install appropriate signs or signals. *Bonneville v Alpena,* 158 Mich 279; 122 NW 618 (1909); *Mullins v Wayne Co,* 16 Mich App 365; 168 NW2d 246 (1969).

Once a signal or sign is installed, it must be maintained in a functional condition. *O'Hare v Detroit,* 362 Mich 19; 106 NW2d 538 (1960); *Lynes v St Joseph Co Rd Comm,* 29 Mich App 51; 185 NW2d 111 (1970); *Tuttle v Dep't of State Hwys,* 397 Mich 44; 243 NW2d 244 (1976). An otherwise appropriate sign or signal must be positioned properly so as to relate adequately to the hazard it is designed to ameliorate. *Nat'l Bank of Detroit v Dep't of State Hwys,* 51 Mich App 415; 215 NW2d 599 (1974).

In this case, the stoplight actually installed was positioned correctly, was functional, and, being of a type common to such moderate speed intersections, was suitable and appropriate to the task. It is the rare case in which, where otherwise appropriate signs or signals have been installed, the judiciary will second-guess the highway authorities and impose liability because a better sign or signal might have been installed.

NW2d 694 (1993). We consider it prudent not to wholly rely upon *Pick* under these circumstances and to analyze this case on the assumption that such a duty with respect to signage does generally exist.

The question of the duty of a governmental agency having jurisdiction of a highway to install appropriate traffic signals or signs was recently addressed by the Michigan Supreme Court in *Mason v Wayne Co Bd of Comm'rs,* 447 Mich 130; 523 NW2d 791 (1994). The Court held that the statutory highway exception to governmental immunity "abrogates immunity at 'points of special danger to motorists . . . .'" *Grof v Michigan,* 126 Mich App 427, 434; 337 NW2d 345 (1983); *Comerica Bank v Dep't of Transportation,* 168 Mich App 84, 86; 424 NW2d 2 (1987). "The plaintiffs' argument that prior decisions abrogate governmental immunity for all 'traffic control devices,' including signs, reads those decisions far too expansively." 447 Mich 135.

The Michigan Supreme Court has previously recognized that highway authorities have discretion in the erection of traffic-control signs pursuant to MCL 227.608; MSA 9.2308, although "this discretion may not be capitalized upon to shield the authority from liability for highway defects." *Salvati v Dep't of State Hwys,* 415 Mich 708, 715; 405 NW2d 856 (1982);[7] *Mullins, supra.*

Justice Coleman's lead opinion in *Salvati* appears to have been adopted by virtue of the Supreme Court's peremptory affirmance in *Colovos v Dep't of Transportation,* 205 Mich App 524; 517 NW2d 803 (1994), aff'd 450 Mich 860 (1995),[8] in which the Supreme Court ruled that "the alleged

---

[7] *Salvati* was a decision by an equally divided court, three justices voting on each side and one not participating; accordingly, standing alone, neither opinion is precedential. *In re Godoshian Estate,* 110 Mich App 196; 312 NW2d 209 (1981); *People v Petros,* 198 Mich App 401, 407, n 4; 499 NW2d 784 (1993).

[8] Because, from the terms of the Supreme Court's peremptory order in *Colovos* and this Court's published opinion, this Court can determine the applicable facts and the reason for the decision, the peremptory order constitutes a binding precedent. *People v Crall,* 444 Mich 463, 464; 510 NW2d 182 (1993).

inadequacy of the sign was not a proximate cause of the accident." The facts in both *Colovos* and *Salvati* are essentially identical, and the Supreme Court's decision in *Colovos* is consistent only with Justice COLEMAN's opinion. Of critical importance, *Colovos* reinforces the notions that (1) the issue of the adequacy of existing signals vis-a-vis negligence with respect to the statutory duty to maintain a highway in a state of reasonable repair is one of law and that (2) signage of the generally appropriate type will not be found legally deficient merely because superior alternatives were available.[9]

In *Tuttle v Dep't of State Hwys, supra* at 52, the Court held that the duty to maintain the highways is breached by failure to properly install a traffic-control device once the agency having jurisdiction of the highway has determined that such a device is necessary. In that case, a full workweek elapsed between the date that the state highway department first determined that additional safeguards were needed at the particular point and the date of the accident, with the indicated traffic-control device not yet having been installed.

In the case at bar, the intersection of Middlebelt Road and Wick-Goddard Road is characterized by clear, unobstructed visibility in all relevant direc-

---

[9] In *Pick, supra,* this Court focused on the general assertion in *Scheurman v Dep't of Transportation,* 434 Mich 619; 456 NW2d 66 (1990), that the highway exception to governmental immunity is narrowly drawn and does not include any installation outside the improved portion of the highway designed for vehicular travel. The Pick Court refused to acknowledge any actionable duty with respect to installations whose physical structure falls outside the traveled or paved portion of the roadbed actually designed for vehicular travel. Not only did this Court refuse to convene a conflict resolution panel pursuant to Administrative Order No. 1994-4 when the original panel in *Colovos, supra,* criticized the *Pick* decision, but the Supreme Court's summary affirmance lends further strength to its rationale. Accord *Cox v Dearborn Heights,* 210 Mich App 389; 534 NW2d 135 (1995).

tions; there is simply no evidence on the record to indicate that this intersection constitutes a point of "special hazard." It is merely a junction between two ordinary county roads.

Unlike the situation in *Tuttle,* there is no suggestion here that the Wayne County Road Commission, at any time before this accident, concluded that the traffic situation warranted additional signal devices or the creation of a separate lane for cars turning left from eastbound Wick-Goddard or that the signal controlling the intersection did not operate properly. Nor is the intersection at all similar to the egregious situation that faced the Court in *Tuttle,* where the state highway department determined that a traffic light was warranted at a newly constructed intersection between a five-lane road, with a fifty-five miles per hour speed limit and a state trunk line road also having a fifty-five miles per hour speed limit, the Court observing that the roads were actually designed for travel at seventy miles per hour in four directions. *Tuttle* had an extreme factual situation, a recognized hazard of the highest degree with only a dilatory governmental response. *Id.* at 50.

In the instant case, there was a traffic-control signal at the intersection; no claim is made that it was not functioning, not visible, or even not seen by plaintiffs' decedent or Ronnie Raymond. Under plaintiffs' version of the facts, ten or twelve drivers of vehicles ahead of decedent, by waiting their turn, negotiated the desired left turn successfully without incident. This appears to be nothing more than an ordinary intersection, like thousands of others throughout the state, familiar to all motorists, safely driven with the exercise of reasonable care.

### D. "REASONABLY SAFE AND CONVENIENT"

The principal focus of the trial court's findings of fact regarding the left-turn signal, and of the expert testimony proffered by plaintiffs underlying those findings, concerns whether this intersection could have been made safer by adding a left-turn signal.[10] This was error. The highway exception to governmental immunity does not, in terms or by accepted judicial construction, require the agency having jurisdiction over a highway to maintain a highway so as to make it as safe as humanly possible for public travel. The statute, MCL 691.1402; MSA 3.996(102), unambiguously limits the road commission's legal duty "to maintain the highway in reasonable repair so that it is *reasonably safe* and convenient for public travel."

We concede, as we must, that the construction of a left-turn lane or the installation of a left-turn signal could have made this intersection safer. So would constructing a cloverleaf arrangement, whereby Middlebelt and Wick-Goddard Roads would be placed on different levels and changes of direction could be achieved by means of a system of ramps, also ameliorate this danger.

The only basis for imposing liability for a highway accident is that the highway was not maintained so as to be reasonably safe. Put another way, if the existing highway is maintained so as to be reasonably safe, liability cannot be established by demonstrating that it could be made safer still.

The highway exception does not transform governmental agencies having jurisdiction of highways into insurers or guarantors of motorist safety. All that the statute demands is that the

[10] The trial court also addressed whether the road could have been made safer by the addition of a left-turn lane. However, given our earlier discussion regarding the left-turn lane, it is unnecessary to address that aspect of the trial court's decision.

road be *reasonably* safe for public travel. MCL 691.1402; MSA 3.996(102).

Ordinary intersections on flat terrain are not points of "special hazard," for which the duty to maintain highways in a condition reasonably safe and fit for public travel imports an obligation to install extraordinary traffic-control devices beyond common stop signs or stop lights. While the case at bar involves catastrophic injuries to a victim toward whom we are wholly sympathetic, we cannot justify misconstruing the statutory duty to maintain highways in a condition reasonably safe and fit for public travel as tantamount to an obligation to create the safest possible highway system. Such a construction would impose a burden upon the public treasury that, if it is to be imposed, must be imposed only by the representative institutions of government.

Creative and innovative lawyers and expert witnesses will always be able to identify and demonstrate some practical way in which a road could reasonably have been made safer. But the statutory test is not a comparative one. Safer or even the safest highways are laudable goals, but there are costs to such goals, as well as benefits, and the Legislature has seen fit to limit the duty of highway authorities to providing highways that are "reasonably safe." The guiding principle is that the highway exception to governmental immunity, as an exception to the general rule, is narrowly drawn. *Fogarty v Dep't of Transportation,* 200 Mich App 572, 574; 504 NW2d 710 (1993); *Scheurman v Dep't of Transportation,* 434 Mich 619, 630-631; 456 NW2d 66 (1990).

### E. PROXIMATE CAUSE

Our discussion to this point has necessarily cen-

tered on the issue of actionable duty. Duty is a
question of law to be decided by the court. *Moning
v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977).
But the determination of this threshold issue may
involve an assessment of the relationship between
the injury and the manner in which that injury
occurred, which is properly a question of proxi-
mate cause. *Id.* at 433-434. Proximate cause in-
cludes an evaluation of the foreseeability of conse-
quences and whether a defendant should be held
legally responsible for such consequences. *Skinner
v Square D Co,* 445 Mich 153, 163; 516 NW2d 475
(1994). Proximate cause is distinguished from
cause in fact, i.e., whether "but for" the defen-
dant's course of action the plaintiff's injury would
not have occurred. *Id.*[11]

As between the conflicting versions of what
occurred, neither is reflective of the existence of
proximate cause. In the version given by the inde-
pendent witnesses, Ronnie Raymond's vehicle
strayed to the left of the center line at a time
when Ralph Johnson's vehicle was on its proper
side of the center line, not in motion, waiting for
traffic to clear so that the left turn could be
completed. No amount of traffic signals can protect
motorists from collisions with other motorists who

---

[11] Causation, or proximate cause, is divided into cause in fact and
legal cause, also known as proximate cause. *Skinner, supra* at 162-
163. A plaintiff must adequately establish cause in fact in order for
legal cause or "proximate cause" to become a relevant issue. *Id.* at
163. As the Michigan Supreme Court noted in *Dedes v Asch,* 446
Mich 99, 106, n 2; 521 NW2d 488 (1994):

> Through all the diverse theories of proximate cause runs a
> common thread; almost all agree that defendant's wrongful
> conduct must be a cause in fact of plaintiff's injury before there
> is liability. This notion is not a metaphysical one but an
> ordinary, matter-of-fact inquiry into the existence or nonexis-
> tence of a causal relation as lay people would view it. Clearly
> this is not a quest for a sole cause. Probably it cannot be said of
> any event that it has a single causal antecedent; usually there
> are many.

drive on the wrong side of the road. Had there been a left-turn signal, Ralph Johnson from all appearances would still have been in the same position, ripe for injury should any westbound driver stray across the center line.[12]

Alternatively, if as Ralph Johnson himself testified, he started to make his left turn after the traffic signal turned red, he strayed across the center line at a point when he was obligated to

---

[12] The dissent charges that "the majority has failed to accord any deference to the trial court at all." We respectfully disagree. We have carefully avoided in any way rejecting or even challenging any purely factual determination made by the trial judge as trier of fact, *People v Jackson* 390 Mich 621, 628; 212 NW2d 918 (1973), not deeming even a single such finding as "clearly erroneous." That with which we have taken issue in the trial court's verdict are legal conclusions that we review de novo, *People v Conner* 209 Mich App 419, 423; 531 NW2d 734 (1995). *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 135; 274 NW2d 411 (1979). Likewise, findings regarding mixed questions of law and fact are reviewed on appeal de novo as issues of law. *Johnson v Harnischfeger Corp,* 414 Mich 102, 121; 323 NW2d 912 (1982). Our conclusion that the trial court erred in the application of the statutory "reasonably safe and fit for travel" standard is well within our proper sphere of competence and responsibility. *Andrews v Detroit,* 450 Mich 874 (1995).

We agree with the dissent that the controlling legal standard is whether the highway is "reasonably safe and fit for travel." In this regard, it must be borne in mind that governmental bodies are generally immune from tort liability *unless* they fail to maintain highways in such a condition; statutory exceptions to general rules are narrowly construed in order that they not swallow the general rule. *Richardson v Warren Consolidated School Dist,* 197 Mich App 697, 702; 496 NW2d 380 (1992). In particular, the public highway exception is narrowly drawn. *Id.*

The dissent overlooks the most important point, which is that construction of a statute is a question of law. *Haberkorn v Chrysler Corp,* 210 Mich App 354, 371; 533 NW2d 373 (1995). Expert testimony to the effect that the absence of a left-turn signal made the intersection unsafe was effectively an effort to transform an issue of law into one of fact. See *People v Doan,* 141 Mich App 209, 214; 366 NW2d 593 (1985); *People v Drossart,* 99 Mich App 66, 76; 297 NW2d 863 (1980). And we have accepted as true the expert's claim that installation of a left-turn signal, or creation of a left-turn lane, would have made this intersection safer for occupants of vehicles turning left from Wick-Gratiot onto Middlebelt. We cannot, however, defer to the expert with respect to the legal question of the proper construction of the controlling statutory standard and its application to the facts of the case.

stop in obedience to the signal, or Ronnie Raymond also ignored the red traffic light. Had there been a left-turn signal, Ronnie Raymond still would have had a red traffic signal facing him and we fail to see anything that would have prevented a collision if Raymond or any other westbound driver were prepared to proceed through the intersection despite the red signal.

If the signal was not yet red, then Raymond had the right of way, and Ralph Johnson was obligated to yield the right of way to him. MCL 257.650; MSA 9.2350. Again, we fail to see how a left-turn signal would have eliminated the danger. And, if, as Johnson claimed, his view was temporarily blocked by a tractor-trailer, that did not give him the right to commence a left turn in violation of statutory right of way rules; rather, both common sense and due care for his own safety, *Bertrand v Alan Ford, Inc,* 449 Mich 606, 616; 537 NW2d 185 (1995), would have prompted him to wait until his line of sight cleared before attempting any maneuver that would require him to cross the path of oncoming traffic.

There is a similar lack of proximate cause with respect to the lack of a left-turn lane. Plaintiff was part of a line of cars and other vehicles that were making left turns. The purpose of a left-turn lane is to protect motorists turning left from rear-end collisions, which is not what occurred here. In fact, the other drivers like plaintiff who were turning left were able to appropriate the leftmost of the two lanes of traffic heading east for their purposes without incident. It was either the manner in which Ralph Johnson carried out his decision to turn left, or in which Ronnie Raymond proceeded

through the intersection, that ultimately caused the collision, not the absence of a left-turn lane.[13]

### III. CONCLUSION

Although the relevant facts are somewhat in dispute in this case, whichever version of the facts is adopted and relied upon, the result must be the same: defendant has not violated its duty to maintain the highway in a condition reasonably safe and fit for public vehicular travel. This mundane intersection and ordinary stoplight combination created a highway reasonably safe for public travel. Accordingly, the issue whether defendant breached the statutory duty to maintain the highway is not a question of fact, but one of law. Issues of law are reviewed by this Court de novo, not under any deferential standard. *Feaster v Portage Public Schools,* 210 Mich App 643; 534 NW2d 242 (1995). In reviewing nonjury cases in particular, this Court sifts the evidence through a judicial sieve of "finer mesh than the one correspondingly employed on review of a jury's verdict." *Colovos, supra* at 527, quoting *Schneider v Pomerville,* 348 Mich 49, 54-55; 81 NW2d 405 (1957). Therefore, to the extent our decision might be read as contrary to factual determinations made by the trial court, we deem those findings clearly erroneous. *Pick v Gratiot Co Rd Comm,* 203 Mich App 138; 511 NW2d 694 (1993); *Tuttle, supra* at 52.

A governmental agency having jurisdiction over a highway has a statutory obligation to "maintain the highway in reasonable repair so that it is

[13] Our analysis appears to further suggest a lack of cause in fact, which must be shown in order for proximate cause to be relevant. In any event, while cause in fact may be lacking, we specifically find that plaintiffs' injuries were not a foreseeable consequence of the failure to install a left-turn signal or left-turn lane. Accordingly, there is no proximate cause.

reasonably safe and convenient for public travel." The obligation includes the duty to keep the roadway, *as constructed,* reasonably safe for vehicular travel. Accordingly, the applicable agency does not have a statutory duty to reconstruct or modify the road or, as discussed in this case, to install a left-turn lane.

In addition, a governmental agency fulfills its statutory obligation by providing traffic-control devices or signs that permit ordinarily prudent motorists to navigate and negotiate the road with reasonable safety. The fact that better signals or signs might have obviated an accident does not aid a court or factfinder in determining whether the traffic-control measures actually installed nonetheless made the highway reasonably safe. Ordinary, perpendicular road intersections on flat terrain are reasonably safe when controlled by a fully functional red-yellow-green stoplight even if the addition of a left-turn signal would make the intersection even safer.

Accordingly, defendant did not breach its duty to keep the highway in question maintained so as to be reasonably safe and convenient for public travel. Additionally, the alleged derelictions in the design or maintenance of the highway with reference to a left-turn lane and a left-turn signal— under any of the versions of how the accident occurred as testified to by the various witnesses— were not a proximate cause of this accident. The trial court therefore erred in failing to grant judgment for defendant on grounds of governmental immunity.

Plaintiffs' decedent and his family have suffered a horrendous tragedy in this case. It was not, however, a tragedy for which the people of Wayne County are fairly responsible.

Reversed and remanded for further proceedings

consistent with this opinion. We retain no further jurisdiction.

F. M. MESTER, J., concurred.

WAHLS, J. *(dissenting).* I respectfully dissent because I would hold that the issues of duty and governmental immunity were not properly preserved for this Court's review. In addition, I would hold that the trial court did not err in holding defendant liable where the question whether defendant exercised reasonable care was for the trier of fact to determine.

I

Although defendant pleaded governmental immunity as an affirmative defense, defendant did not move for summary disposition on this basis at trial. In addition, defendant did not raise the issue at trial. Neither did defendant raise the issue of duty with the trial court. This Court cannot address issues not decided by the trial court. *Vungterveen Systems, Inc v Olde Millpond Corp,* 210 Mich App 34, 38; 533 NW2d 320 (1995).

Although the majority cites *Patterson v Kleiman,* 199 Mich App 191; 500 NW2d 761 (1993), aff'd, but modified 447 Mich 429; 526 NW2d 879 (1994), that case simply does not stand for the proposition that this issue was preserved for appeal. Rather, that case held that a plaintiff need not anticipate a defendant's affirmative defense of governmental immunity by pleading gross negligence in the complaint. *Id.,* p 192. In any case, the defendant in *Patterson* moved for summary disposition on the basis of governmental immunity, which properly brought the issue before that trial court. *Id.* Here, defendant did not similarly move.

In addition, in *Hillman's v Em 'N Al's,* 345 Mich 644; 77 NW2d 96 (1956), the defendant did more than simply raise an affirmative defense in its pleadings. The defendant in that case made its argument an issue at trial by the submission of documentary evidence, and the issue was stated in the trial court's pretrial order. *Id.,* pp 651, 656. Here, in contrast, the evidence at trial focused on the reasonableness of the decedent's and the defendant's conduct, and the necessity of a left-turn lane or signal. The evidence did not address whether defendant owed the decedent any duty at all.

## II

In addition, even if this issue was preserved, it is not dispositive. It is clear that an exception to governmental immunity exists to require governmental agencies to "keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel." MCL 691.1402(1); MSA 3.996(102)(1); *Cox v Dearborn Heights,* 210 Mich App 389, 392-393; 534 NW2d 135 (1995). The statutory goal of maintaining safe highways is clear and unambiguous. *Chaney v Dep't of Transportation,* 447 Mich 145, 155; 523 NW2d 762 (1994) (BRICKLEY, J).

### A

The majority has concluded that the highway exception to governmental immunity only requires a governmental agency to "maintain" a highway, but not to "improve," "augment," or "expand" one. However, the majority admits that the duty includes the "installation" of suitable traffic-control signals and signs. See *Cox, supra,* p 395. Using

the majority's own definitions, the "installation" of previously nonexistent signs would be an "improvement," rather than "maintenance."

Rather than adopt the majority's distinction, I would follow the plain language of the statute, which is that a duty exists to keep highways reasonably safe and convenient for public travel. The fact that plaintiffs argue that defendant should have constructed a left-turn lane is relevant to the reasonableness of defendant's behavior, not to the existence of a duty itself. In the absence of a motion for summary disposition pursuant to MCR 2.116(C)(10) or a motion for a directed verdict, I would hold that the decision regarding whether reasonable care required the construction of a left-turn lane at this intersection should have been left to the trier of fact. See *Scott v Harper Recreation, Inc,* 444 Mich 441, 448; 506 NW2d 857 (1993).

### B

Plaintiffs also argued at trial that there should have been a left-turn signal at this intersection. Regarding this issue, the majority concludes:

> This appears to be nothing more than an ordinary intersection, like thousands of others throughout the state, familiar to all motorists, safely driven with the exercise of reasonable care.

In fact, there was evidence at trial that plaintiffs' decedent was exercising reasonable care at the time of the accident. The deposition of Lloyd Meyer was read into the record at trial. On the date in question, Meyer was working as a truck driver when he witnessed the automobile accident while stopped at a red light. Meyer testified that

plaintiffs' decedent was waiting to make a left turn in the middle of the intersection when struck by a van. Meyer testified that no part of the station wagon driven by plaintiffs' decedent crossed over into the oncoming traffic lanes.

An appellate court is not to substitute its judgment for that of the trial court unless the facts clearly preponderate in the opposite direction. *Arco Industries Corp v American Motorists Ins Co,* 448 Mich 395, 410; 531 NW2d 168 (1995). Findings of fact may not be set aside unless clearly erroneous. *Id.* In particular, appellate courts should give special deference to the trial court's findings when they are based upon its assessment of the witnesses' credibility. *Id.* In making its finding that the intersection was safe as constructed, the majority has failed to accord any deference to the trial court at all.

In addition, the majority mischaracterizes the testimony of plaintiffs' expert. Rather than merely state that a left-turn signal would have made the intersection safer, plaintiffs' expert testified that the absence of such a signal made the intersection unsafe. The difference is critical because it addresses the focus of the statute, i.e., whether the intersection was "reasonably safe and convenient for public travel." MCL 691.1402(1); MSA 3.996(102)(1). Once again, I would defer to the trial court's determination regarding the credibility of witnesses. *Arco, supra,* p 410.

The majority argues that this case would impose too great of "a burden upon the public treasury." However, the Legislature has decided to provide an exception to governmental immunity for public highways. It is the responsibility of this Court to enforce, rather than to enact or effectively abro-

gate, that legislation. *City of Lansing v Lansing Twp,* 356 Mich 641; 97 NW2d 804 (1959); *Cox, supra,* p 397.

Finally, regarding the majority's analysis of proximate cause, once again it contradicts evidence properly before the trial court. Plaintiffs' expert witness testified explicitly that, "[h]ad a left turn phase been in existence at the time of Mr. Johnson's accident, most likely no accident would have occurred." This Court must accord special deference to the trial court in evaluating the credibility of witnesses. *Arco, supra,* p 410. The majority has failed to accord that deference.

### III

The majority did not reach defendant's argument that the award was so high as to justify remittitur. However, I would hold that defendant failed to preserve this issue by not moving for remittitur in the trial court. *McFadden v Tate,* 350 Mich 84, 91; 85 NW2d 181 (1957); *Jamison v Lloyd,* 51 Mich App 570, 576; 215 NW2d 763 (1974); see also *McLemore v Detroit Receiving Hosp,* 196 Mich App 391, 401-402; 493 NW2d 441 (1992) (failure to provide transcript of trial court's ruling prevents this Court from reviewing issue of remittitur). This Court cannot defer to the trial court's superior ability to view the evidence and evaluate the credibility of the witnesses if the trial court was never afforded the opportunity to exercise its discretion. See *Palenkas v Beaumont Hosp,* 432 Mich 527, 534; 443 NW2d 354 (1989); *Phillips v Deihm,* 213 Mich App 389, 404; 541 NW2d 566 (1995).

I would affirm.