IOVINO v STATE OF MICHIGAN

IOVNIO v OAKLAND COUNTY BOARD OF COUNTY ROAD COMMISSIONERS

Docket Nos. 197410, 197418. Submitted September 4, 1997, at Lansing. Decided February 17, 1998, at 9:00 A.M. Leave to appeal sought.

Henry Iovino, as personal representative of the estate of Jean M. Iovino, brought an action in the Court of Claims against the state of Michigan, alleging that the decedent's death that occurred when the vehicle she was driving collided with a train owned by the Grand Trunk Railroad Company as she turned from Dixie Highway, a state highway, onto Watkins Lake Road, a road under the control of the Oakland County Board of County Road Commissioners, was the result of the failure of the Michigan Department of Transportation (MDOT) to maintain adequate traffic control devices or warning signs at the intersection of Dixie Highway and Watkins Lake Road. The state moved for summary disposition on the basis of governmental immunity, arguing that, although it had jurisdiction of the intersection of the state highway and the county road, it had no jurisdiction at the actual site of the accident and that any failure to maintain adequate signs or traffic control signals at the intersection did not fall within the highway exception to the broad general grant of governmental immunity from tort liability that it enjoyed, because its duty to maintain a safe highway extended only to the improved portion of the highway designed for vehicular traffic. The Court of Claims, Rudy J. Nichols, J., agreed and granted summary disposition for the state. The plaintiff appealed (Docket No. 197410).

Henry Iovino, as personal representative of the estate of Jean M. Iovino, brought a similar action in the Oakland Circuit Court against the Oakland County Board of County Road Commissioners, alleging that the county board had a duty to add additional railroad warning devices on Watkins Lake Road at the railroad grade crossing and that the decedent's death resulted from the county board's failure to discharge that duty. The circuit court, Rudy J. Nichols, J., granted summary disposition for the county board. The plaintiff appealed (Docket No. 197418). The appeals were consolidated.

The Court of Appeals *held*:

1. Although governmental agencies enjoy a broad grant of immunity from tort liability with respect to activities that are in the exercise or discharge of a governmental function, the highway exception to that general grant of immunity found in MCL 691.1402; MSA 3.996(102) imposes a duty on an agency that has jurisdiction over a highway to maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel and makes the governmental agency liable for the failure to discharge that duty. However, the statute further provides that the duty to maintain that is imposed on the governmental agency "extends only to the improved portion of the highway designed for vehicular travel."

2. The highway exception abrogates governmental immunity at points of special danger to motorists. To be a point of hazard for purposes of the highway exception, the condition must be one that uniquely affects vehicular travel on the improved portion of the roadway, even though the condition may not be physically part of the roadway itself. Because the existence of adequate warning signs or traffic control devices can directly affect vehicular travel on the improved portion of the roadway in a manner such that travel will not be reasonably safe, the existence or absence of such signs and devices can be points of hazard for the purpose of the highway exception if the presence or absence creates a special hazard. Accordingly, a governmental agency having jurisdiction over a roadway may be held liable for its failure to provide adequate warning signs or traffic control devices even if those signs and devices would have been located outside the traveled portion of the roadway if that failure results in a unique hazard to vehicular travel on the traveled portion of a roadway.

3. Because the plaintiff alleged that the traffic control light that the state installed at the intersection to control the traffic that was turning from the state highway onto the county road had made the intersection more dangerous to motorists by inviting motorists to turn from the state highway onto the county road despite the presence of an oncoming train, the traffic control signal erected by the state can be considered to be a point of hazard for the purposes of the highway exception.

4. The trial court erred in finding that the traffic light installed by the state conferred more safety on motorists than the stop sign previously erected at the site of the accident.

5. Because the railroad tracks are encountered by a vehicle making a right turn from the state highway onto the county road even before the turn has been completed and because the MDOT at the time of decedent's accident had already exercised its statutory authority and ordered the railroad to install railroad crossing gates

at that grade crossing, the MDOT exercised control, and therefore jurisdiction, over the grade crossing even though the grade crossing was located in the county road. Accordingly, the trial court erred in granting summary disposition for the state.

6. Because the MDOT, as the only public body authorized to do so, ordered the railroad to install crossing gates, thereby recognizing that the intersection was not reasonably safe, the state's subsequent failure to undertake acts to ensure that the intersection was safe was sufficient to render it liable under MCL 257.668(2); MSA 9.2368(2).

6. Because the state had exercised jurisdiction with respect to the improvement of the grade crossing and had not required the board of county road commissioners to make any improvements at the accident site to increase traffic safety, the plaintiff is precluded by the provisions of MCL 257.668(2); MSA 9.2368(2) from bringing suit against the county board for its failure to place additional warning signals at the accident site.

Reversed in part and affirmed in part.

1. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — DUTY.

A duty is imposed on governmental agencies to provide traffic control devices or warning signs at, or with regard to, points of hazard affecting vehicular travel on roadways within their jurisdiction (MCL 691.1402; MSA 3.996[102]).

2. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — JURISDICTION.

The term "jurisdiction" as used in the highway exception of the governmental immunity act is synonymous with "control" (MCL 691.1402[1]; MSA 3.996[102][1]).

3. HIGHWAYS — RAILROAD CROSSING DEVICES — DEPARTMENT OF TRANSPORTATION.

Only the Michigan Department of Transportation has the authority to order the installation of active railroad warning devices, advance warning signs, or railroad crossbucks at railroad grade crossings.

*Philo, Atkinson, White, Stephen, Wright & Whitaker* (by *Harry M. Philo* and *Stanley L. White*) and *Guarnieri & Martinez, P.A.* (by *James W. Guarnieri*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Mark V. Schoen,* Assis-

tant Attorney General, for Michigan Department of Transportation.

*Beier Howlett* (by *Gerald G. White* and *Robert G. Waddell*), for Oakland County Board of County Road Commissioners.

Before: KELLY, P.J., and REILLY and JANSEN, JJ.

KELLY, P.J. In Docket No. 197410, a wrongful death action, plaintiff, decedent Jean Marie Iovino's husband and personal representative of her estate, appeals as of right the order of the Court of Claims[1] granting summary disposition in favor of the State of Michigan, Department of Transportation (hereafter MDOT) based on governmental immunity, pursuant to MCR 2.116(C)(7). In Docket No. 197418, also an action for wrongful death, plaintiff appeals as of right the order of the Oakland Circuit Court granting summary disposition for the Oakland County Board of County Road Commissioners on the basis of governmental immunity. We reverse in part and affirm in part.

On August 28, 1993, Jean Iovino was killed when the vehicle she was driving collided with a train owned by the Grand Trunk Railroad Company. The accident occurred on the Grand Trunk train crossing located at the point where Watkins Lake Road, an Oakland County roadway, widened to form an intersection with Dixie Highway, a state highway, in Waterford Township in Oakland County. Before the accident, Iovino was driving southeast on Dixie Highway. She turned right to travel south on Watkins Lake

---

[1] Oakland Circuit Judge Rudy J. Nichols sat as the Court of Claims.

Road and almost immediately came upon the train as it entered the grade crossing.

Northbound Watkins Lake Road, a two-lane road, ends at Dixie Highway, which is a five-lane highway. The two roadways intersect at a seventy-degree angle. There is a traffic signal under the MDOT's jurisdiction located at the intersection of Dixie Highway and Watkins Lake Road. A vehicle turning right onto Watkins Lake Road from southeast-bound Dixie Highway crosses the Grand Trunk railroad tracks before completing the turn. There are two railroad crossing light poles, or crossbucks, located on either side of the tracks, but there were no crossing gates in place when decedent's accident occurred.

At the time of the decedent's accident, when a train entered the crossing "circuitry," the traffic signal on southeast-bound Dixie Highway was "preempted" and became a flashing yellow light, even if it originally had been red, thus allowing a driver in the right turn lane to turn onto Watkins Lake Road. Motorists traveling north on Watkins Lake Road toward Dixie Highway had the benefit of a flashing red light from the same traffic signal at the intersection when there was an oncoming train. Additionally, a traffic signal on Watkins Lake Road located just south of the crossing turned red to stop northbound traffic when a train approached the crossing, regardless of the light cycle that was in effect before the train crossed the circuitry.

Plaintiff filed wrongful death claims against the MDOT, the road commission, and the Grand Trunk Rail-

road.[2] The MDOT filed a motion for summary disposition, claiming that, although it had jurisdiction over the intersection of Dixie Highway and Watkins Lake Road, it had no jurisdiction over the actual site of the accident. Rather, the MDOT argued that the board of county road commissioners had exclusive jurisdiction over the place where the accident occurred and that, thus, the MDOT enjoyed governmental immunity from the negligence suit stemming from the accident. The MDOT also advanced that plaintiff's allegation that the intersection was unreasonably dangerous because it did not contain adequate signs or lights was barred by MCL 691.1402; MSA 3.996(102), which limits the state's duty to maintain a highway reasonably safe for vehicular travel "only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, cross walks, or any other installation outside of the improved portion of the highway designed for vehicular travel." The Court of Claims agreed that MCL 691.1402; MSA 3.996(102) shielded the MDOT from liability, and thus granted its motion for summary disposition

I

Plaintiff first argues that the trial court erred in granting the MDOT's motion for summary disposition on the basis of governmental immunity because the MDOT had an affirmative duty to maintain adequate traffic control devices or warning signs at the intersection of Dixie Highway and Watkins Lake Road. We agree.

---

[2]  Grand Trunk settled the lawsuit plaintiff filed against it, and does not join in this appeal.

In deciding a motion for summary disposition brought pursuant to MCR 2.116(C)(7), a court must consider all documentary evidence submitted by the parties. *Terry v Detroit*, 226 Mich App 418, 428; 573 NW2d 348 (1997). The court accepts all well-pleaded allegations as true and considers them in a light most favorable to the nonmoving party in determining whether the defendant is entitled to judgment as a matter of law. The plaintiff must allege facts giving rise to an exception to governmental immunity in order to defeat the motion for summary disposition. *Id.* We review the trial court's grant of summary disposition de novo. *Id.* at 423.

Generally, governmental agencies enjoy a broad grant of immunity from tort liability in cases where the governmental agency is engaged in the exercise or discharge of a governmental function. MCL 691.1407(1); MSA 3.996(107)(1); *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 134; 545 NW2d 642 (1996). While maintenance of highways is one such governmental function, the so-called "highway exception" to governmental immunity, MCL 691.1402(1); MSA 3.996(102)(1), provides in pertinent part:

> Each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person sustaining bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him or her from the governmental agency. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not

include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

Thus, the governmental immunity act limits liability under the highway exception to the governmental agency having jurisdiction over the highway at the time of the injury. *Markillie v Livingston Co Bd of Co Rd Comm'rs*, 210 Mich App 16, 19; 532 NW2d 878 (1995). Only one governmental agency at a time may have jurisdiction over a highway; there is no concurrent jurisdiction. *Id.* at 20. The state has sole jurisdiction over intersections of state and county roadways. *Id.*

We find the case of *Pick v Szymczak*, 451 Mich 607; 548 NW2d 603 (1996), to be particularly instructive in resolving the instant controversy. In *Pick*, the plaintiff's automobile collided with another at an intersection that was not controlled by any traffic lights or signs. Apparently, an apple orchard located on private property near the road obstructed the vision of motorists using the intersection. *Id.* at 610-612. The plaintiff sued the Gratiot County Road Commission for negligence, alleging that, pursuant to MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*, the county road commission had the statutory duties to design, maintain, and repair the intersection so that it was reasonably safe and fit for public travel, which included the duty to install adequate traffic control devices at the intersection. *Id.* at 611-612. The circuit court granted summary disposition for the road commission, reasoning that the road commission was not statutorily required to " 'go outside the roadway proper' " when acting pursuant to its duty to maintain and repair the roadway. *Id.* at 612. A panel of this

Court affirmed the order granting summary disposition in favor of the defendant.[3] This Court reasoned that the hazard created by the orchard did not give rise to a duty on the part of the road commission, because the orchard was located outside the improved portion of the roadway designed for vehicular travel. This Court went further to hold that because signs and traffic lights are located outside the portion of the highway designed for vehicular travel, the plaintiff could not predicate liability on the road commission's failure to erect proper lights or warning signs. *Id.* at 613-614.

The Supreme Court reversed. The Court "expressly h[e]ld that a duty to provide adequate warning signs or traffic control devices at known points of hazard arises under the highway exception of the governmental tort liability act." *Id.* at 619. The Court noted that the highway exception abrogated governmental immunity at "points of special danger to motorists," *id.* (quoting *Mason v Wayne Co Bd of Comm'rs*, 447 Mich 130, 135; 523 NW2d 791 [1994]), which the Court defined

> as any condition that directly affects vehicular travel on the improved portion of the roadway so that such travel is not reasonably safe. To be a point of hazard for purposes of the highway exception, the condition must be one that uniquely affects vehicular travel on the improved portion of the roadway, as opposed to a condition that generally affects the roadway and its surrounding environment. . . . [S]uch conditions need not be physically part of the roadbed itself. [*Pick, supra* at 623.]

---

[3]   203 Mich App 138; 511 NW2d 694 (1993).

The fact that the orchard was located outside the improved portion of the roadway designed for vehicular travel was not critical because

> [v]ehicular travel does not take place solely on the two-dimensional length and width of the roadway; rather, it occurs in three-dimensional space, and necessarily implicates factors not physically within the improved portion of the roadway itself, factors that can be points of hazard to reasonably safe vehicular travel on the interconnected network of public roadways. [*Id.* at 622-623.]

Thus, *Pick* stands for the proposition that a governmental entity having jurisdiction over a roadway may be held liable for its failure to provide adequate traffic control devices or warning signs at points of special danger to motorists, even if the condition presenting a special hazard is not physically part of the roadway designed for vehicular travel.

While *Pick* did not involve an accident at a railroad crossing, we find that its reasoning supports our holding that governmental immunity does not bar plaintiff's negligence claim against the MDOT. In our view, the positioning and proximity of the railroad tracks to the intersection of Dixie Highway and Watkins Lake Road, which created an enormous hazard to motorists turning right from Dixie Highway onto Watkins Lake Road, posed a special danger to motorists using the intersection. A corresponding duty arose on the part of the MDOT to erect adequate signs or traffic signals to ensure reasonable safety for traffic using the intersection.

However, the MDOT argues that it fulfilled its duty to make the intersection reasonably safe by installing a light for southeast-bound traffic on Dixie Highway controlling right turns onto Watkins Lake Road. That

light would begin flashing yellow whenever a train entered the grade crossing on Watkins Lake Road. Citing *Wechsler v Wayne Co Rd Comm*, 215 Mich App 579; 546 NW2d 690 (1996), the MDOT argues that it cannot be held liable for its failure to make the intersection safer. The trial court agreed with this contention. We disagree. The hazards associated with intersections and railroad crossings are dramatically different.

In *Wechsler*, the plaintiff's decedent was killed when he turned left from Wick-Goddard Road onto Middlebelt Road. There was no left turn lane. Because traffic was heavy, the decedent had to negotiate his turn when the light was yellow. However, as he was turning, his vehicle collided with a van. *Id.* at 582-583. The plaintiff alleged that the intersection without a left turn lane was a "special hazard" and that the defendant road commission was negligent in failing to install a left turn signal. *Id.* at 584. This Court stated that ordinary intersections on flat terrain are not points of special hazard for which the duty to maintain highways in a condition reasonably safe and fit for public travel imports an obligation to install extraordinary traffic-control devices beyond common stop signs or stop lights. *Id.* at 595. Additionally, this Court held that if the existing highway was maintained so as to be reasonably safe, liability could not be predicated on a defendant's failure to make it safer still. *Id.* at 594.

We believe that *Wechsler* is easily distinguishable from the present case. *Wechsler* did not involve an intersection that funneled turning traffic directly onto railroad tracks and into the path of an oncoming train. Moreover, plaintiff in this case is not simply arguing that the intersection could be made safer.

Rather, plaintiff asserts that the flashing yellow lights placed by the MDOT made the intersection and railroad crossing *more dangerous* by inviting motorists to proceed and turn right despite the presence of an oncoming train.[4] An otherwise appropriate sign or signal must be positioned properly so as to relate adequately to the hazard it is designed to ameliorate. *Id.* at 590. Plaintiff has presented evidence to establish that the traffic signals at the intersection of Dixie Highway and Watkins Lake Road may not have been properly positioned or programmed to ameliorate the hazard of an oncoming train. Thus, we reject the MDOT's contention that plaintiff has merely alleged that it could have made the intersection safer. Instead, plaintiff's claim is that the intersection was not reasonably safe because the MDOT failed to erect adequate signs or signals to warn of oncoming trains or otherwise prevent turning traffic from colliding with crossing locomotives.

Additionally, we must note that it was improper for the trial court to make the factual finding that the flashing yellow light positioned on Dixie Highway "does in fact confer more safety upon motorists" than the stop sign that was previously erected at the site. A trial court is not permitted to make factual findings in resolving a motion for summary disposition. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). Whether the MDOT breached its duty to make the intersection of Dixie Highway and Watkins Lake Road reasonably safe for vehicular travel is a question for the jury to decide. Therefore, the trial court

---

[4] It is important to note that the MDOT had replaced a stop sign at the intersection with the flashing yellow light.

erred in determining that the flashing yellow light was adequate to render the intersection reasonably safe.

Further, we are not persuaded by the MDOT's argument that it cannot be held liable because the accident actually took place on Watkins Lake Road, where the train struck Mrs. Iovino's car. Plaintiff has supplied this Court with several photographic exhibits that clearly depict the intersection where Mrs. Iovino's accident occurred. There is no question that the MDOT had jurisdiction over the intersection. *Markillie, supra.* The railroad tracks cross Watkins Lake Road at a point where the very tip of this roadway begins to widen into its intersection with Dixie Highway. A vehicle making a right turn from southeast-bound Dixie Highway comes upon the railroad tracks even before completing its turn. It is not at all apparent that Mrs. Iovino's accident took place outside the intersection over which the MDOT had jurisdiction. Moreover, the term "jurisdiction" as used in MCL 691.1402(1); MSA 3.996(102)(1) is synonymous with "control." *Markillie, supra* at 22. The MDOT concedes that it had previously ordered Grand Trunk to place railroad crossing gates at the grade crossing where the accident occurred. Clearly, then, the MDOT actually exercised control over the area in question and must be perceived to have jurisdiction over this spot pursuant to the conception of jurisdiction as used in the statute.

We must also reject the MDOT's proposition that it cannot be held liable for failure to provide adequate traffic signals or warning signs at the intersection because these devices would amount to railroad warning devices and no public authority had ordered the MDOT to erect such warning devices at this loca-

tion. MCL 257.668(2); MSA 9.2368(2), concerning the erection of railroad warning devices by public authorities, states, in pertinent part:

> The state transportation department with respect to highways under its jurisdiction, the county road commissions, and local authorities with reference to highways under their jurisdiction, may designate certain grade crossings of railways by highways as yield crossings, and erect signs at the crossings notifying drivers of vehicles upon the highway to yield. . . . The erection of or failure to erect, replace, or maintain a stop or yield sign or other railroad warning device, unless such devices or signs were ordered by public authority, shall not be a basis for an action of negligence against the state transportation department, county road commissions, the railroads, or local authorities.

See *Taylor v Lenawee Co Bd of Co Rd Comm'rs*, 216 Mich App 435, 438-439; 549 NW2d 80 (1996). By enacting this statute, "the Legislature intended that no liability was to be premised upon the absence of warning devices at a railroad crossing absent an order by the proper authority to install devices and a failure to follow that order." *Turner v CSX Transportation, Inc*, 198 Mich App 254, 257; 497 NW2d 571 (1993).

Before Mrs. Iovino's accident, the MDOT ordered Grand Trunk to install railroad crossing gates at the Watkins Lake Road grade crossing. While the MDOT claims that it cannot be held liable for its failure to provide some type of warning device at the intersection to alert drivers of the presence of crossing trains because a public authority had not ordered it to erect such warning devices, the MDOT has not shown that a legitimate public body exists that could order it to take such action. Indeed, only the MDOT can order the installation of active railroad warning devices,

advance warning signs, and railroad crossbucks. *Edington v Grand Trunk W R Co*, 165 Mich App 163, 168, n 3; 418 NW2d 415 (1987). Here, the MDOT, the sole public body with the authority to order additional or improved railroad warning devices, recognized the need to oversee the safety of the intersection and, thus, ordered the installation of crossing gates. It thereafter failed to correct the traffic light situation existing on Dixie Highway that allowed traffic turning right from that highway to immediately cross the railroad tracks, with the attendant obvious danger that such a situation entailed. Under these unique circumstances, we find that the MDOT's order to Grand Trunk—its recognition that the intersection was not reasonably safe—and its subsequent failure to secure the safety of the intersection were sufficient to fulfill the order requirement of MCL 257.668(2); MSA 9.2368(2).

II

We affirm the trial court's grant of summary disposition for the board of county road commissioners. It is not contested that the MDOT ordered only Grand Trunk to make improvements at the accident site to increase traffic safety. The MDOT forwarded a copy of the order to the board of county road commissioners, but did not require that public body to add railroad warning devices of any kind. Hence, pursuant to MCL 257.668(2); MSA 9.2368(2), plaintiff is precluded from bringing suit against the board of county road commissioners for its failure to place additional warning signals at the accident site. *Taylor, supra* at 439-440.

Reversed in part and affirmed in part.